JONAS CONKLING *et al.*, plaintiffs in error, *vs.* ROBERT W. CARSON *et al.*, defendants in error.

### *Error to Jo Daviess County Court.*

An assignment by an insolvent debtor is illegal and fraudulent, which requires creditors who shall become parties and share in its proceeds, to receive their dividends in full satisfaction of their demands against the assignor.

Such an assignment is not absolutely void, but is voidable by the creditors of the assignor, but as between the parties, it is valid and operative; the title to the property passed thereby to the assignee; and a sale by him to a *bona fide* purchaser, before the creditors had taken steps to defeat the assignment, would be valid.

The deed of assignment being voidable only at the instance of judgment creditors of the assignor, may be made good by matter *ex post facto.* And when an assignment is so modified and changed as to divest it of its objectionable features, by the consent of all the parties thereto, prior to the time that any of the creditors are in a position to attack the original assignment, it must stand, and the rights of the creditors must be governed by it.

A clause which provides that any surplus remaining, after the claims of the creditors, parties to the assignment, have been satisfied, shall be paid over to the assignor, does not invalidate the assignment.

This was a bill in chancery, filed in the Jo Daviess County Court, by the creditors of Carson & Garnes, against them and Artemas L. Holmes, praying that an assignment made by them to Holmes of their goods, &c., for the benefit of their creditors, should be set aside, as fraudulent and void, and that Holmes should be decreed to pay over to all the creditors of Carson & Garnes, *pro rata*, all of the moneys received by him from the property assigned, and for general relief. The respondents filed their demurrer to a part of the bill, and their joint and several answers to the residue. At the November term, 1848, of the Court, Hugh T. Dickey, Judge, sustained the demurrer, and decreed that the complainants take nothing by their bill.

The complainants bring the cause to this Court, and assign for error, the decree of the County Court sustaining the demurrer and dismissing the bill.

The bill was, in substance, as follows:

That complainants, in the month of March, 1845, trading and doing business in the city of New York, sold a certain quantity of merchandize to the defendants, Carson & Garnes, at that time and up to the 22d day of June, 1846, trading as merchants, under the firm of Carson & Garnes, in the city of Galena; and that the said complainants also sold certain other goods to the said defendants, Carson & Garnes, in the months of June and September, 1845, and in the month of April, 1846; for which purchases Carson & Garnes executed six promissory notes to

the said complainants, payable in different sums and at several periods. The last note was due on the 3d day of December, 1846. That on the promissory note first due a payment of $300 was made ; and that on the 10th day of November, 1846, the complainants obtained a judgment in the Jo Daviess County Court against the defendants, Carson & Garnes, on a portion of said indebtedness. Upon which said judgment an execution was issued December 7th, 1846, and returned March 7th, 1847, " not satisfied." The bill charges that the defendants, Carson & Garnes, at the time when said merchandize was so sold to them as aforesaid, made large purchases of merchandize of other merchants in New York, Philadelphia, and elsewhere, which they caused to be transported to Galena, their place of business ; that John C. Garnes, one of the firm, visited the eastern cities to purchase goods for the firm, and that at that time the said firm were largely indebted to eastern merchants for purchases previously made ; which indebtedness amounted to a sum exceeding $7,000 ; which said firm of Carson & Garnes were then totally unable to pay.

Complainants further charge, that no one of said notes were ever paid to the complainants. Bill further states, that the firm of Carson & Garnes was largely indebted at the time said Garnes went east for the purpose of purchasing goods ; and that he did make such purchases in the eastern cities to the amount exceeding $10,000, and forwarded them to their place of business in Galena ; which goods, so purchased in the spring of 1846, by the said Garnes, was done upon representations by him that the firm of said Carson & Garnes were abundantly able to meet their liabilities, and pay for the same ; when, in fact, at the time of said representations, the said Carson & Garnes were utterly insolvent, and unable to pay the debts then due or to be paid thereafter ; which fact was well known to Carson & Garnes. Bill further states, that said Garnes, after having made the purchases of goods, as above stated, returned to Galena, the place of business of said firm of Carson & Garnes, about the 22d day of April, 1846, and shortly afterwards, to wit, about the 20th of June, 1846, one J. R. Malony, representing himself as agent of certain creditors of said Carson & Garnes, induced the said Carson & Garnes to make an assignment to Artemas L. Holmes, one of the defendants ; which said assignment the complainants

charge by their bill was and is void and fraudulent in law, and a fraud upon said creditors of Carson & Garnes. It is further charged by said bill, that the defendants, Carson & Garnes, and also said A. L. Holmes, knowing that said deed of assignment, executed on the 22d of June, 1846, by said Carson & Garnes, on the 16th day of July, 1846, attempted to give validity and legality to the same, by a certain instrument in writing, the contents of which original assignment, as well as the instruments subsequently executed, are succinctly as follows : The original assignment to A. L. Holmes, dated June 22, 1846, between Carson & Garnes, of the first part, and A. L. Holmes, of the second part, and the several creditors who have executed, or who shall hereafter execute or accede to the same, within sixty days from the date of the third, after reciting that Carson & Garnes are unable to pay the immediate demands against them, &c., conveys all their property, of every name and nature, real and personal, except household furniture and property exempt by law from levy and sale, to A. L. Holmes, in trust, to sell and dispose of said property, &c., at his reasonable discretion, &c., to compound for the same, and the proceeds to apply : 1st. To pay the expenses, &c., of the assignment, &c., of trust. 2d. To pay James Carter & Co. $ 600, and save harmless E. W. Strother, surety for same ; and a judgment of E. C. Sloan & Co., of $ 165 ; and a judgment of Lindsey & Co., for $ 378 ; and an acceptance of Spears & Vanderhoff, of $ 278 87, indorsed by Malony. 3d. To pay certain creditors, eighteen in number, naming them, and specifying the amounts, ( about $ 10,000 or $ 11,000,) *pro rata.* 4th. To pay the remainder of said property and proceeds among all the other parties of the third part ; and if there be any surplus, after paying the same in full, then, fifth, to pay such surplus to Carson & Garnes.

The assignment appoints Holmes attorney to carry into effect the objects of the assignment.

Holmes accepted the trust, and agreed to perform faithfully, but not to be liable for loss, &c., except for wilful default or negligence. The creditors are to accept the property, &c., assigned, in full payment, &c., of their debts and demands, and fully release Carson & Garnes. The creditors, by signing, are to express their assent to the assignment, and accept the provisions made for them. This original assignment purports to

be signed by Carson, Garnes, Holmes, and by ten of the eighteen creditors, by an agent. Recorded, June 23d, 1846.

The addition, alteration and amendment, of July 16th, 1846, after reciting the making of the original assignment: That at the time of making the assignment Carson & Garnes believed that the property conveyed by the assignment would pay all their debts, and, in consideration thereof, a provision was inserted for a release by the creditors who became parties thereto, of their debts due from Carson & Garnes, and a discharge, &c.. That since the making of the assignment, on taking an inventory of the goods and merchandize and property assigned, they do not think there is enough to pay all their just debts. That Carson & Garnes agree with all creditors who have executed said assignment, (any thing therein notwithstanding,) or who shall hereafter do so, that the said deed and its provisions shall not operate, nor any thing therein, as a payment, discharge, &c., of the debts, &c., of the creditors, or of any of them, nor of any damage, loss, &c., upon their respectively becoming parties thereto or not; but all the creditors, parties, or to become parties thereto, shall be entitled to the avails of the assignment, without releasing Carson & Garnes. Carson & Garnes, in conclusion, agree to pay all their creditors, parties or to become parties to the assignment, or not. Recorded, July 17th, 1846. This purports to be signed by Carson & Garnes, alone.

The second addition, alteration or amendment, of 28th July, 1846, after reciting the making of the assignment on the 22d of June, and the making of the instrument of the 16th of July, by which the original was altered and modified, by discharging and doing away with the provision as to the release, &c.: That said instrument of the 16th July, was made with the assent and concurrence of the trustee, and all other then parties thereto, and that such assent does not appear by said instrument. That it be known that the addition of 16th July, altering, &c., the assignment, was made with the assent and concurrence, at the time, of the trustee and creditors who had become parties thereto; and they hereby assert and concur in the alteration and amendment made by the instrument of 16th of July, and consent and agree to the execution of the trusts, &c., as modified and altered by the instrument of 16th of July, 1846; and for the purpose of giving the creditors of Carson & Garnes, who have not

yet signed the original, and become parties thereto, as modified, &c., the time for signing is extended to sixty days from this date. This purports to be signed by Carson, Garnes, Holmes, and the ten creditors who signed the original assignment.

The said bill further charges, that the goods and effects transferred in the said original deed of assignment, were the goods obtained from the creditors of said Carson & Garnes, and among others, from the complainants; and that the said goods and effects, so assigned, constituted all the property, real and personal, of said Carson & Garnes. That in pursuance of said assignment, the said Carson & Garnes delivered over to Holmes, the trustee, and the said Holmes received all the goods, effects and property mentioned in said assignment. That since the assignment, Holmes has proceeded to execute said trust, and sold the property and effects mentioned in the assignment; that he has paid over the moneys so received by him to the parties designated in the assignment. That said trustee was only authorized to pay over moneys received by him as trustee, to those persons who had assented to said assignment, by becoming parties thereto.

Bill charges, that the said trustee had paid over large sums of money to divers persons who had not assented to the assignment, and names to whom thus paid, and the sums paid to each.

Further it is charged, that a suit and judgment and execution at law, so far as complainants and other creditors of Carson & Garnes are concerned, have been utterly unavailing, for the reason that the property, credits and effects transferred by the assignment, were placed entirely beyond the reach of an execution; the said trustee having sold the property transferred by the deed of assignment.

It is further charged, that at the time of said assignment, Carson & Garnes were indebted to an amount exceeding $24,000; that the amount of the money to be first paid to the creditors particularly named in the assignment, exceeded the sum of $11,000; that the goods, credits and effects assigned were not worth more than $14,000; that after deducting expenses, costs charges of executing the trust, &c., there would be nothing remaining to pay the creditors not particularly preferred.

Bill further charges, that on the 18th day of July, 1846, the complainants, on their own behalf and on that of other creditors

of Carson and Garnes, gave a written notice to A. L. Holmes, trustee, that the said deed of assignment was fraudulent and void, and not to sell or dispose of the goods and merchandize conveyed by said assignment, and of the intention of the complainants to apply for an injunction, and to take legal steps to have said assignment set aside and declared null and void.

Bill further charges, the said Carson & Garnes were wholly irresponsible, and had no means to pay their debts, except the proceeds of the goods and property conveyed by said assignment. And further, that unless said assignment be set aside as fraudulent and void, and the proceeds ordered to be divided among all the creditors of Carson & Garnes, *pro rata,* that the complainants and other creditors not preferred by the deed of assignment, would wholly lose their demands against Carson & Garnes.

HEMPSTEAD & WASHBURNE, and J. H. COLLINS, for plaintiffs in error.

J. P. HOGE, for defendants in error.

Opinion by TREAT, C. J.:

The deed of assignment of the 22d of June, 1846, was illegal and fraudulent as against the existing creditors of Carson & Garnes, because of the provision requiring creditors, who should become parties to it, and entitled to share in the proceeds of the property assigned, to receive their dividends in full satisfaction and discharge of their respective demands against the assignors. The law does not allow a debtor to impose such harsh and onerous conditions upon his creditors. A debtor in failing circumstances has an undoubted right to prefer one creditor to another, and to provide for the preference, by assigning his effects; but he is not permitted to say to any of his creditors that they shall not participate in his present estate, unless they will release all right to satisfy the residue of their debts out of his future acquisitions. It is unnecessary, however, to discuss the question, as the cases of Howell *vs.* Edgar, 3 Scammon, 447, and Ramsdell *vs.* Sigerson, 2 Gilman, 78, are directly in point, as to the invalidity of the original assignment.

But that assignment was not absolutely void, and therefore incapable of confirmation. It was fraudulent, *per se*, as to the existing creditors of the assignors, and liable to be avoided by them, but by them only. As between the parties, it was valid and operative. The title to the property passed to the assignee, subject, indeed, to be defeated by creditors in a condition to reach the property by the process of the law. A sale by the assignee to a *bona fide* purchaser, before the creditors had pursued their legal remedies, would be valid and effectual. The deed, then, being voidable only at the instance of a creditor having a judgment against the debtors, could be made good by matter *ex post facto*. It was in the power of the parties to purge it of all obnoxious provisions. The deed was capable of confirmation, before the rights of creditors intervened to prevent it. Murray *vs.* Riggs, 15 Johnson, 571 ; Sterry *vs.* Arden, 1 Johnson's C. R., 261 ; Hone *vs.* Woolsey, 2 Edward's C. R., 289. The complainants were not in a position to attack the assignment, until long after the execution of the agreements of the 16th and 28th of July, 1846. Those agreements were executed by the assignors and assignees, as well as by all of the creditors who had signified their assent to the original assignment; and they so modified and changed the terms of that assignment, as to divest it of the objectionable clause. The creditors were left free to become parties to the assignment, and participate in its benefits, without impairing their right to proceed against the assignors, for any balance that might remain due them after the execution of the trust. The assignment, thus purged of the exceptionable feature, must stand, and the rights of the creditors, in respect to the property assigned, must be governed by it, unless it contains some other provisions that may render it invalid. The only other objection taken to the assignment, is the clause providing for the payment to the assignors, of the surplus that may remain after the satisfaction of the debts of such creditors as shall become parties to it. This provision does not invalidate the assignment. The precise question arose in the case of Cross *vs.* Bryant, 2 Scammon, 36. In that case, the debtors made an assignment for the benefit of their creditors, which declared that the proceeds of the property remaining in the hands of the assignee, after the payment of such of the creditors as should, within sixty days, execute the deed of assign-

ment, should be paid over to the assignors. It was contended that this provision vitiated the assignment, but the Court held otherwise. The Court said : " The provision in the deed requiring the payment over of any surplus, should there be such, to the assignors, was not an improper condition. It was but the declaration of a resulting trust, which the law would raise, had it not been inserted." We are disposed, without a reinvestigation of the question, to adhere to that decision. It was made many years since, and important rights may have been acquired on the faith of it, which would be seriously affected by a contrary determination. Nor do we perceive that any considerable injustice or inconvenience can result from sustaining such an assignment. The clause in question permits the creditors to come in under the assignment, within a reasonable time, and partake of its benefits, without discharging their debtor from the payment of any balance that may remain due them. If they decline to do so, they are at full liberty to pursue their remedies against the debtor. If there is any surplus, after the payment of the claims of the assenting creditors, it may be reached either in the hands of the trustee or the debtor. If there was no such provision in the assignment, the trustee would be authorized, after a reasonable time had elapsed for creditors to come in and claim the benefit of the assignment, to restore the surplus to the debtor.

Not one of the numerous cases referred to on the argument, as establishing a different doctrine, goes the length of holding an assignment fraudulent, *per se*, because of the insertion of a provision like the one in question, although the expressions used by judges in some of them, would seem to authorize such a conclusion. The strongest cases, and in fact the only cases in which the question can be said to have arisen, are Burd *vs.* Smith, 4 Dallas, 69 ; Mackie *vs.* Cairns, 5 Cowen, 547 ; and Austin *vs.* Bell, 20 Johnson, 440. In the first case, the assignment provided that the shares of such of the creditors as should not, within nine months, signify their acceptance of its provisions, should be paid to the assignor, " to the intent that he might therewith compound with and satisfy such creditors." The Court—three judges against two—held the assignment fraudulent as to a creditor who had obtained a judgment against the debtor, before the deed was delivered to the assignees, and

before any of the creditors had assented to the assignment. The decision was clearly right. The deed was not operative, at least against the creditor, until it was delivered to the assignees. In the second case, the Court held an assignment fraudulent and void as to creditors, which reserved to the debtor out of his estate an annual sum of $ 2,000, for the support of himself and family, for the period of four years, unless he should be sooner discharged from all his debts. This decision was unquestionably correct. The reservation was absolute, not depending, as in this case, on the voluntary acts of the creditors. In the last case, an assignment was held invalid, as it clearly should have been, which required the creditors to release the debtor from all their demands; and which reserved to him the shares of such of the creditors as declined to become parties to the assignment, as well as the sum necessary for the support of himself and family.

It will thus be seen, that in all of these cases the assignments might have been declared invalid, without impugning the principle which we are inclined to sustain. We do not therefore consider them as authorities in point on the question involved in the case before us.

The decree of the Court below is affirmed, with costs.

*Decree affirmed..*