THE UNION NATIONAL BANK OF CHICAGO

*v.*

THE BANK OF COMMERCE OF ST. LOUIS.

1. PARTNERSHIP DEBTS, *and debts of individual partners—out of what fund, respectively, to be paid.* In the distribution of the assets of insolvent partners, the rule in equity is, that partnership creditors have a·primary claim upon the partnership assets, to the exclusion of the creditors of the individual partners, until all the partnership debts shall be satisfied;—and the same rule will exclude partnership creditors from participation in assets of the individual partners until all their individual debts are paid.

2. SAME—*what constitutes individual indebtedness, as distinguished from partnership indebtedness.* Where three members of a partnership firm gave their joint and several promissory note, payable to the firm, and the firm subsequently indorsed the note to a third person, such third person will hold the note as an individual claim against the makers, as distinguished from a partnership claim,—having the right to hold the firm liable also, not as makers, but as indorsers;—and this individual character of the claim against the makers will not be in the least modified or changed by the fact that the note has been reduced to judgment against them.

3. ASSIGNMENT FOR THE BENEFIT OF CREDITORS—*of its construction as to what creditors are included.* A debtor in failing circumstances made a deed of assignment of all his property for the benefit of his creditors. The deed directed the assignee "to pay over and discharge in full, with lawful interest, if the net proceeds should be sufficient for that purpose, all and singular the debts due from the said party of the first part, to the persons severally named in the schedule of creditors to be thereunto annexed, it being intended to include in said schedule the names of all the creditors of the party of the first part, with the amount due to each of said creditors. And if the said net proceeds should not be sufficient for the payment of the said debts in full as aforesaid, then to apply the same, so far as they would extend, to the payment of the said debts, ratably, and in proportion to the amounts thereof, without distinction or preference." It was *held*, that under a proper construction of this deed, all the individual creditors of the assignor were embraced in it, even though the names of some of them did not appear in the schedule subsequently filed.

4. SAME—*right of assignor to change the terms of the deed.* Where a debtor has executed and delivered to the assignee a deed of assignment of his property for the benefit of creditors, the assignor has no power afterwards to change the terms and conditions of the assignment without the consent of the assignee and the creditors.

APPEAL from the Appellate Court of the Third District; the Hon. CHAUNCEY L. HIGBEE, presiding Justice, and Hon. OLIVER L. DAVIS and Hon. LYMAN LACEY, Justices.

Messrs. McCOY & PRATT, for the appellant:

The members of a partnership, in making assignments of their individual property for their individual debts, have the legal right to exclude a creditor of the firm from participation in the assets until the creditors of the separate partners are. paid, and in so doing no fraudulent preference is created. Citing *Kirby* v. *Schoonmaker*, 3 Barb. 46; *Van Rossum* v. *Walker*, 11 id. 237; *Hurlbert* v. *Dean*, 2 Abbott's Dec. 433; *Newman* v. *Bagley*, 16 Pick. 572.

Magoun, on June 15, 1877, in connection with his partners, had, by a deed of assignment, made provision for all his partnership debts, and attached thereto, subsequently, a schedule of all his partnership assets, directing therein that this debt —the debt of appellee—should be paid out of the same.

While thus caring for this joint debt, he was at the same time providing for his individual debts by his individual assignment, in which the debt of appellee was not named, but in which it was stated, "it being intended to include in said schedule the names of all the creditors of the party of the first part." It does not say *individual* creditors, and the partnership creditors were also his creditors.

Rejecting the schedules, the result manifestly would be to let in *all* the creditors of each—the firm creditors as well as the individual creditors. By the subsequent instrument of June 30, after reciting the date of the original assignment, the name of the assignee, etc., he gives a list of his creditors, and for the purpose of preventing any misunderstanding as to what creditors should share in his estate, he uses this language:

"Also, a schedule of all the individual liabilities of the said John Magoun, which individual liabilities are to be paid out of the proceeds of said assets, the residue to be applied to the

payment of the liabilities of the said Magoun, as a partner of the firm of McClun, Holder & Co."

As to the right of the debtor to modify and amend his assignment at any time before it is attacked, it has been clearly settled by this court. *Conkling et al.* v. *Carson et al.* 11 Ill. 503; *Pierce et al.* v. *Brewster et al.* 32 id. 268.

It is contended that this alteration, or *addendum,* could not become operative, unless signed and sealed by the assignee, with the consent of all the creditors. Why is this necessary?

The record affords the same evidence that the assignee assented to and accepted the second assignment, as it does that he accepted the first.

If the amendment and schedules are ruled out, then we insist that all creditors, both individual and joint, should receive an equal distribution of the assets of the estate.

Mr. A. E. DE MANGE, for the appellee:

Appellee is the joint and several creditor of John E. McClun, John Magoun and Charles W. Munsell, and the judgment in appellee's favor was rendered upon the note which is in terms joint and several, and that joint and several liability must equitably inhere in the judgment.

The intention of parties to a deed will govern, and in construing a deed of assignment, the same rules apply as in ordinary conveyances. *Platt* v. *Lott,* 17 N. Y. 479; *Townsend* v. *Stearns,* 32 id. 213; *Bridge* v. *Willington,* 1 Mass. 226; *Means* v. *Presbyterian Church,* 3 Watts & Ser. 312; *Jackson* v. *Dunsbaugh,* 1 Johns. Ch. 95; *Turner* v. *Jaycox,* 40 Barb. 172; *Ely, Clapp & Co.* v. *Hair, Nugent & Co.* 16 B. Mon. 239.

In *Adams et al.* v. *Sturgis et al.* 55 Ill. 472, the court say: "It is a just and uniform rule, that the partnership property shall be applied to the partnership debts, to the exclusion of the creditors of the individual members of the firm, and that the creditors of the latter should be first paid from the separate effects of the debtor before the partnership creditors can claim anything."

18—94 ILL.

*Rogers* v. *Meranda et al.* 7 Ohio State, 130, an exhaustive decision upon a general assignment for the benefit of creditors. *Rainey et al.* v. *Nance et al.* 54 Ill. 34; *Morrison* v. *Kurtz et al.* 15 id. 196; *Ladd* v. *Griswold et al.* 4 Gilm. 36; *Moline Water Power and Manufacturing Co.* v. *Webster*, 26 Ill. 239; *Murrill* v. *Neal*, 8 How. (U. S.) marg. 421; *Forbes et al.* v. *Scannell* (construing an assignment), 13 Cal. 287; 3 Kent's Com. 65.

LORD COKE said, in Coke's Littleton, 42: "Whensoever the words of a deed, or of the parties without deed, may have a double intendment, and one standeth with law and right, and the other is wrongful and against law, the intendment that standeth with law shall be taken."

Burrill on Assignments, 3d ed. p. 280, says: "In the absence of an express provision directing an unlawful appropriation of the funds, the law will interpret the instrument (deed of assignment) according to the rights of the parties and the respective equities of the creditors." *Farquharson* v. *Eichelberger*, 15 Md. 64; *Hickman* v. *Messinger*, 49 Pa. State, 465; *Black's Appeal*, 44 Pa. St. 503; *Eyre* v. *Beebe*, 28 How. Pr. 340; *Forbes* v. *Scannell*, 13 Cal. 287.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

John E. McClun, Charles W. Holder, John Magoun, Charles W. C. Munsell and John W. Whipp composed the firm of McClun, Holder & Co., engaged in banking in Bloomington. On the 16th day of June, 1877, the firm executed and delivered a deed of assignment to Lawrence Weldon, as assignee, in which all the property, real and personal, belonging to the firm was conveyed on the trusts expressed in the deed. On the same day John E. McClun, John Magoun and Charles W. C. Munsell, being unable to pay their individual debts, each executed a deed of assignment for the benefit of his creditors, by which the individual property of each was conveyed to Lawrence Weldon, in trust, as set forth in each of the three deeds. On the 18th day of August, 1877, the

assignee, Lawrence Weldon, filed his bill in equity in the McLean circuit court, which, after disclosing the foregoing facts, alleges that, among the assets assigned, were large amounts of real estate, which said assignee asked power of the court to sell upon credit; also power to compromise debts. It also sets up, among other things, that a conflict of interest exists between the individual creditors and the members of the said firm and the creditors of the firm of McClun, Holder & Co. That various opinions were entertained by different creditors of said Magoun as to the best manner of selling and disposing of the real estate belonging to him.

The bill prayed that complainant might be advised in the premises, and instructed in the several particulars in the bill mentioned in what manner he should sell the real estate assigned to him, whether for cash or on credit; if on credit, upon what security; what extensions he might give of payment of claims assigned to him. It made all the creditors parties, among the rest the Union National Bank of Chicago, and the Bank of Commerce of St. Louis.

The Bank of Commerce, on the 18th day of May, 1878, filed its intervening petition in said cause, in which it sets up that the Bank of Commerce is a corporation, organized and doing business under the laws of the State of Missouri, in St. Louis, and is one of the defendants to the original bill; that on April 6, 1877, defendants, John E. McClun, John Magoun and Charles W. C. Munsell, gave their note to McClun, Holder & Co., a partnership doing business in Bloomington, under the name of the Home Bank, which note is as follows:

" $20,000.00.        .        BLOOMINGTON, *April* 6, 1877.

"Ninety days after date, for value received, we jointly and severally promise to pay to McClun, Holder & Co., or order, at the Bank of Commerce in the city of St. Louis, $20,000; if not paid at maturity, to forfeit and pay 20 per cent interest

per annum till paid, as liquidated, agreed and assessed damages thereon for said detention and non-payment.

"J. E. McClun,

"John Magoun,

"C. W. C. Munsell."

That before the maturity of the note, the banking firm indorsed the note under their firm name, for a good consideration, as follows: "Pay Bank of Commerce or order,—McClun, Holder & Co."

That at the November term, 1877, of said circuit court, orator brought suit on said note against said John E. McClun, John Magoun and Charles W. C. Munsell, and recovered a judgment thereon, on the common law side of said court, for the sum of $21,400, against the said John E. McClun and John Magoun. Said Munsell was not included in said judgment because he was not served by the sheriff with the summons in said cause, and has not since been made a party to said judgment, because he has been adjudicated·a bankrupt; but petitioner shows that he is still liable to orator as one of the makers of said note, and the assets of his estate in the hands of Lawrence Weldon, assignee, are still liable for the payment to orator of said note, or the judgment obtained thereon, and, as orator purchased said note upon the faith and credit of said McClun, Magoun & Munsell, it is entitled to recover the amount of said judgment, together with the lawful interest, out of the individual estates of said McClun, Magoun & Munsell, equally with the other individual creditors of the makers of said note, before any of the creditors of McClun, Holder & Co. are entitled to receive anything from the individual estates of either of the makers of said note; and if the individual assets of McClun, Magoun & Munsell are not sufficient to pay said judgment, then orator insists that it is entitled to recover the unpaid balance of said judgment out of the assets of said assignor and indorsers of said note, paid McClun, Holder & Co., *pro rata* with the

other partnership creditors of said firm of McClun, Holder & Co.

That said Weldon has paid to orator on said judgment, since the recovery thereof, the sum of $3000, which amount has been duly credited on said judgment by orator, but the balance thereof remains unpaid upon the records of this court.

That the individual creditors of said McClun, Magoun & Munsell, as well as the creditors of the firm of McClun, Holder & Co., are named in said original bill filed by said Weldon, as assignee, and in the schedules thereto attached and made part of said bill—all of which said individual and partnership creditors are made parties respondent to said original bill, and are or will be duly summoned to answer the same—all of whom your petitioner makes respondents hereto, and prays that they may be required to answer the allegations contained herein, but not under oath.

The petitioner also prays for an order upon Weldon to pay petitioner out of the assets of Magoun, McClun & Munsell his claim *pro rata* with the other individual creditors.

The Union National Bank of Chicago answered the petition, in which it in substance sets up that the note does not represent an individual indebtedness of McClun, Magoun & Munsell, or either of them, but only the indebtedness of McClun, Holder & Co., which was well known to petitioner.

The court, on the hearing, found that the Bank of Commerce was an individual creditor of John E. McClun, John Magoun and Charles W. C. Munsell, and decreed that the assignee treat the claim as the individual debt of said parties. This decree, upon appeal, was affirmed in the Appellate Court, and the Union National Bank has taken an appeal from the decision of that court.

In the distribution of the assets of insolvent partners, it seems to be well settled by the authorities that partnership creditors have a primary claim upon the partnership assets, and all partnership liabilities must be paid before individual creditors can obtain any share in or division of partnership

funds. And this rule, which confers upon the partnership creditors a priority over the partnership assets in equity, requires that partnership creditors should only share in the surplus of the individual estate of the partners after the payment of all individual debts. In other words, partnership creditors can in equity only look to the surplus of the separate property of a partner after the payment of his individual debts; and on the other hand, the individual creditors of a partner can, in like manner, only claim distribution from the debtor's interest in the surplus of the joint fund after the satisfaction of the partnership creditors. *Rogers* v. *Meranda*, 7 Ohio State, 180.

In Kent's Com. vol. 3, p. 65, the author says: "It was a principle of the Roman law, and it has been acknowledged in the equity jurisprudence of Spain, England and the United States, that partnership debts must be paid out of the partnership estate, and private and separate debts out of the private and separate estate of the individual partner. If the partnership creditors can not obtain payment out of the partnership estate, they can not, in equity, resort to the private and separate estate until private and separate creditors are satisfied. Nor have the creditors of the individual partners any claim upon the partnership property until all the partnership creditors are satisfied."

The rule announced by Kent has been sanctioned by our own court in a number of cases. *Ladd* v. *Griswold*, 4 Gilm. 25; *Morrison* v. *Kurtz*, 15 Ill. 196; *Rainey* v. *Nance*, 54 id. 29.

The first question, then, to be determined is, in which class does the claim of the Bank of Commerce fall? Is it a partnership claim or an individual claim? If an individual claim, is it embraced in the list of creditors who are to share in the assets of the three parties, McClun, Magoun and Munsell, who severally assigned their property? A bare inspection of the note will suffice to show that the claim of appellee is an individual claim against J. E. McClun, John Magoun and C. W. C. Munsell. They, in and by the note, as individuals, jointly

and severally promise to pay the amount named in the note. It is true the bank may hold the firm liable as indorsers, but that fact will not change the character of the liability of the three persons who executed the note as payors. Nor does the fact that a judgment was obtained on the note, shift the character of the liability of the makers. So far as the character of the liability is concerned it remains the same after judgment as before.

We now come to the question whether the claim of the bank was embraced and included in the deeds of assignment. Each of the deeds of assignment of McClun, Magoun and Munsell contained the following:

" To pay over and discharge in full, with lawful interest, if the net proceeds shall be sufficient for that purpose, all and singular the debts due from the said party of the first part to the parties severally named in the schedule of creditors, to be hereunto annexed, *it being intended to include in said schedule the names of all the creditors of the party of the first part, with the amount due to each of said creditors.* And if the said net proceeds shall not be sufficient for the payment of said debts in full, as aforesaid, then to apply the same, so far as they will extend, to the payment of said debts, ratably, and in proportion to the amounts thereof, *without distinction or preference.*"

When the schedule of debts came in appellee was not mentioned therein as one of the creditors, and the question arises whether, from a fair construction of the deed, it was intended to exclude this claim from a participation in the assets. If the intention of the assignor can be gathered from the instrument, that intention must prevail. If the intent had been to exclude some creditor from the list to be incorporated in the schedule, why was this language used: " It being intended to include in said schedule the names of all the creditors of the party of the first part, with the amount due to each of said creditors."

Then, again, the clause which in express language declares that the assets, if not sufficient to pay the debts in full, shall be distributed ratably among the creditors *without distinction* or *preference*, would seem to show, beyond any doubt whatever, that it was intended that the proceeds of the property should be divided among all the creditors. Those provisions in the assignment so clearly manifest an intention to include all the creditors, that we are satisfied the name of appellee was omitted from the schedule by misapprehension or mistake; but however that may be, we are satisfied a fair and reasonable construction of the deed of assignment shows a clear intention on the part of the assignors to protect all individual creditors and allow them to share in the proceeds of the property, although not named in the schedule.

In *Platt* v. *Scott*, 17 N. Y. 478, it was held that an assignment in trust, for the benefit of creditors, of all a debtor's property, which was therein stated to be " more fully and particularly enumerated and described in a schedule annexed," passes property not mentioned in the schedule. In deciding the question, the court said : " Hence, notwithstanding the ordinary rule, that general words are controlled in their operation by those which are more particular and specific, if, upon looking upon the assignment in this case, we are able clearly to see that it was the intention of the assignors to convey to the assignee their whole property, we are bound to give effect to that intent. Were this question to depend solely upon the main clause in the instrument, I should have very little doubt as to the design with which it must have been executed. Not only the general terms in which that clause is couched, embracing, as they do, all the property of the assignors, both real and personal, but the emphatic language with which, as we have seen, it concludes, viz: ' Of every description, belonging to the said parties of the first part, or in which they have any right or interest whatever,' would seem to manifest a plain intent to convey everything which the assignors possessed. It is true, this clause is followed by the words, ' the

same being more fully and particularly enumerated and described in a schedule,' etc. This, however, by no means indicates an intention to qualify or limit the broad and comprehensive language previously used. A schedule would of course be necessary, as a matter of convenience and as a guide to the assignee, and the provision for its annexation does not warrant the inference that it was intended that if any portion of the property of the assignors should be omitted, which might well occur through accident or inadvertence, the title to such property should not pass to the assignee."

What is said in the case cited is in point here. While, by the terms of the assignment, the property is transferred to an assignee to pay the debts due from the assignor to the parties severally named in the schedule of creditors to be thereafter annexed, yet the emphatic language, " it being intended to include in said schedule the names of all the creditors of the party of the first part, with the amount due to each of said creditors," so clearly manifests the intention of the parties that all the creditors of the assignor should share in the assets, that we can not hold that creditors not embraced in the schedule are cut off, without a clear disregard of the intention as disclosed from an examination of the whole deed of assignment.

The schedule of John Magoun, which was executed and delivered fifteen days after the deed of assignment, after describing the property, real and personal, conveyed, contained the following language: "Also a schedule of all the individual liabilities of the said John Magoun, which individual liabilities are to be paid out of the proceeds of said assets, the residue to be applied to the payment of the liabilities of the said Magoun as a partner of the firm of McClun, Holder & Co." This, it is contended, changes the terms of the original assignment. We have been referred to no authority which would sanction the right of an assignor, without the consent and concurrence of the assignee and the creditors, to change the terms and conditions of an assignment after it has been

properly executed and delivered. Upon the execution and delivery of the deed of assignment to Weldon, the title to the property passed to him, in trust, for the purposes declared in the deed. So far as shown by the record, neither the assignee nor the creditors gave their assent to any change in the terms or conditions of the original assignment, and without such consent the assignor was powerless to make any change whatever.

*Conkling* v. *Carson*, 11 Ill. 503, cited by appellant's counsel, does not sustain the position assumed. There, an assignment contained a provision which rendered it voidable by creditors, before, however, the rights of third parties intervened. The assignor, assignee and all the creditors who had assented to the assignment, executed an agreement which relieved the assignment of its objectionable feature, and it was held that they might lawfully make such an agreement. Nor has *Pierce* v. *Brewster*, 32 Ill. 268, cited by appellant, any application here. In that case the assignment contained a provision by which the assignee might sell the property on credit. Before, however, the rights of third parties had intervened, the assignor and assignee executed an agreement that the property should not be sold on credit, and the court held that this agreement removed the obnoxious clause in the assignment. Neither of the cases cited has any bearing on the question here involved.

After a careful examination of the whole record we are satisfied it contains no error, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*