FRANZ JUNGK and Another, Appellants, *v.* D. C. REED and Others, Respondents.

Partnership.—Common Member.—Suit at Law.—The fact that two firms have a common member, will not prevent a suit at law by two members of one firm upon a promissory note given to them by two members of the other firm acting as individuals.

Pleading.—Non-Joinder.—Partnership.—Where two men sue two other men as individuals, upon a promissory note, and it is claimed that the payees and makers of the notes are in fact two firms with a common member, the failure to set up the non-joinder of parties plaintiff and parties defendant, admits that the notes were given by the makers as individuals to the payees as individuals.

Promissory Note.—Fraud.—Concealment.—Where defendants executed promissory notes to plaintiffs, which were given as the consideration for damages for failure to perform certain contracts for the sale of sheep, and the defense is that the plaintiffs were a firm with one Scott, and the defendants were also a firm with one Scott, which fact was not known to defendants when the contracts were made, and that said Scott prac-

4

ticed a fraud upon defendants by concealing the fact of his partnership with plaintiffs, and in making certain false representations to defendants which facts became known to defendants before they signed the notes, which notes, the other defendants indorsed on account of their liability as sureties on the contracts for sale of sheep, but said indorsers did not know such facts at the time of making the notes; *held*, 1. That the defendants, makers of the notes, were liable; 2. That the defendants, indorsers of the notes, were not liable; 3. *Semble* that the indorsers could set up as defense to themselves as indorsers, that which did not constitute a defense for the makers of the note, and that they could deny a liability on the notes indorsed by them, on account of some representation or concealment both of the payees and makers of the notes, which did not in any way increase their liability.

PRINCIPAL AND GUARANTOR.—SURETYSHIP.—INDORSEMENT.—*Semble* that where promissory notes are given by two defendants for damages upon sheep contracts, the performance of which contracts has been guaranteed by two other defendants, and at the time the said contracts were made, certain facts were concealed by plaintiffs, payees of the notes, which increased the liability of the sureties, which facts were not known to the sureties, either when the contracts or notes were executed, and the said sureties indorse the promissory notes before their execution and delivery to the payees, for the reason that they had guaranteed the performance of the contracts; the contract of indorsement is simply a continuance of the contract of guaranty on the contracts, and the liability of the sureties upon the contracts determines their liability as indorsers, and *semble* that a fraudulent concealment of such facts in regard to the contracts would be a material concealment.

PRINCIPAL AND GUARANTOR.—PARTNERSHIP.—COMMON MEMBER.— Where a contract is entered into between two partnerships for the sale and delivery of live stock, which two firms have a common member, and two parties become guarantors of the performance by the one firm of the terms of the contract without any knowledge of the fact of such common member of the two firms, the guarantors are released from liability, *sed quœre* in this case where a promissory note is executed by two members of one firm as individuals to two members

of another firm as individuals, upon which note the guarantors are in fact indorsers, what bearing upon the question has the contract or the common member of both firms?

APPEAL from a judgment of the district court of the first district and from an order refusing a new trial. Hon. John W. Blackburn, judge. The record shows the following facts:

The complaint was upon two promissory notes alleged to have been executed by defendant Reed and defendant Cropper, and alleged to have been endorsed prior to execution and delivery by defendants Holbrook and Duggins. Protest and notice of non-payment upon presentment were also alleged. Defendants Reed and Cropper, answering together, denied a valuable consideration for the notes, and alleged that they were procured without consideration to said Reed and said Cropper by fraud, connivance, misrepresentation and concealment on the part of the plaintiffs, and those acting with them, in the following manner: That on December 1, 1889, said defendants Reed and Cropper were approached by one Scott, who proposed a partnership in the business of buying and selling his stock, etc., and at that time Scott was a partner of plaintiffs in the same business, which fact he concealed from Reed and Cropper, and he induced Reed and Cropper to go into partnership with him for selling live stock, but in truth his sole purpose was to induce them to make ruinous bargains with plaintiffs, of which he was to receive a share of the profits. Thereupon Scott induced Reed and Cropper to make two contracts with plaintiffs for the delivery of sheep at a price Scott represented he could procure sheep for, but less than Reed and Cropper believed they could deliver them for. In consequence Scott neglected and refused to deliver the sheep, and plaintiffs claimed damages against Reed and Cropper and their sureties upon their contracts, and

for those damages the notes sued upon were executed and delivered.

The answer of Holbrook and Duggins denied consideration to the indorsers and their principals, and alleged the transaction of the contracts in the same way. They also alleged that the contracts were made by Reed and Cropper really in connection with Scott to said plaintiffs as individuals, but really to said plaintiffs and Scott, and that "the said parties procured defendant Duggins with one Hapgood to sign as sureties for the faithful performance of the said contracts, and Duggins was ignorant of the interest of Scott, and that said Duggins and Holbrook signed as indorsers for damages for failure to perform the alleged valid contracts.

The evidence showed that Jungk and Fabian did not know of the fact of Scott being a partner with Reed and Cropper. The two contracts mentioned in the pleadings were as follows: The first one, dated Dec. 24, 1889, between Cropper and Reed and Jungk and Fabian for delivery and sale of the sheep at prices named therein, was signed by both firms as partners, "Cropper & Reed" and "Jungk & Fabian." The second contract was dated February 19, 1890, and was similar in terms and execution. A contract was introduced in evidence under which it was claimed Scott and Jungk and Fabian were partners; it provided for purchases and contracts to be made in name of Jungk and Fabian by Scott, and a division of profits on the basis of one-third to each one of the three, Scott, Jungk and Fabian. Jungk and Fabian signed as partners and Scott as individual.

The charge of the court was based upon the propositions:

1. That the contract of Jungk & Fabian with Scott made all three of them partners equally interested, if it was acted upon.

2. That Scott was certainly a partner of Reed and Cropper.

3. That if Scott was a member of both firms, the suit upon the promissory notes could not be maintained, unless when the notes were given, that was a final settlement upon a full understanding of all the facts.

4. That if at the time the contracts were made, Scott was a partner on both sides, the contracts were void unless such fact was known to the sureties and principals, and hence they would not be liable on the contracts.

5. If the sureties were not liable on the contracts they were not liable on the notes.

6. If the original contracts were void as to the sureties, the verdict should be against Reed and Cropper alone.

7. If a settlement was made and a balance struck understandingly by all the parties, all the facts disclosed, and a fair and honest settlement made, then there was a good consideration to the defendants Reed and Cropper and a recovery could be had against them and the sureties also, but if the sureties, Holbrook and Duggins, did not also know all the facts when they signed the notes, they would not be liable.

There are certain sections of the statute which bear upon this question as follows: Section 2865, 2 Comp. Laws. 1888, " One who indorses a negotiable instrument before it is delivered to the payee, is liable to the payee thereon as an indorser."

Section 2864, Id.: " Every indorser of a negotiable instrument, unless his indorsement is qualified, warrants to every subsequent holder thereof, who is not liable thereon to him: 1, that it is in all respects what it purports to be; 2, that he has a good title to it; 3, that the signatures of all prior parties are binding upon them; 4, that if the instrument is dishonored, the indorser will, upon notice thereof duly given to him, pay the same with interest."

*Messrs. Bennett, Marshall and Bradley* and *Mr. George Sutherland,* for the appellants.

Even conceding that one partnership could not sue the other at law, which is not the fact, 2 Bates on Partnership, Sec. 900, yet the equitable liability under these contracts was a sufficient consideration to support the legal liability on the notes. The contracts could have been enforced in equity. *Haven* v. *Wakefield,* 39 Ill, 509; *Cole* v. *Reynolds,* 18 N. Y. 74; *Engliss* v. *Furness,* 2 Abb. Pr. 333, 4 E. D. Smith, 587; *Douglass* v. *Neil,* 37 Tex. 528; *Gibson* v. *Farina Co.,* 2 Disney 499; *Bosanquet* v. *Wray,* 6 Taunt. 597; *Sieghontver* v. *Weissenborn,* 20 N. J. Eq. 172, R. Buckhouse, 2 Law (U. S.) 332.

The fact of Scott's being a partner had no connection with the indorsers of the notes. They simply guaranteed the personal responsibility of Reed and Cropper. Scott's situation did not increase this responsibility, and hence was not material as to them. *Comstock* v. *Gage,* 91 Ill. 328, Brandt on Suretyship, sec. 419. The fact did not affect the particular transaction to which the suretyship related. De Golyer on Guaranty, 258 *et seq.* (326). The plaintiffs could not be made participants in any fraud of Reed and Cropper upon the sureties, unless they had knowledge thereof and participated therein. *Booth* v. *Storrs,* 75 Ill. 438.

The contract of Jungk & Fabian with Scott was not one of partnership. *Eastman* v. *Clark,* 53 N. H. 276, 16 Am. Rep. 192; *Beech* v. *Bush,* 45 Mich. 188, 40 Am. Rep. 465.

The sureties cannot set up a fraud practiced on Reed and Cropper, unless Reed and Cropper repudiate the transaction. 1 Brandt on Suretyship, Sec. 234, *Evans* v. *Kneeland,* 9 Ala. 42; *Brown* v. *Wright,* 7 T. B. Mon. 397. If Reed and Cropper could not avoid the notes, then

the sureties could not. 2 Pom. Eq. Jur. Sec. 872; *Gould* v. *Cayuga Bank*, 86 N. Y. 75, 1 Bigelow on Fraud, 78, 79, 80.

*Messrs. Brown and Henderson,* for the respondents.

ZANE, C. J.:

This is an appeal by the plaintiffs from an order overruling their motion for a new trial, and from a judgment against them on the verdict of the jury. The action was instituted upon three promissory notes, aggregating $7,000, made by defendants Reed and Cropper, and indorsed by the other defendants before the delivery to plaintiffs. The makers joined in one answer, and the indorsers joined in another. In the respective answers, failure of the consideration of the notes, and fraud in obtaining them, were alleged. It was also alleged that one Scott was a partner of both parties to the contracts hereinafter mentioned. It appears from the evidence in the record that the defendants agreed, in writing, to deliver to plaintiffs 5,000 sheep between the 1st and 10th days of July, 1890, at prices and places named, and that one Hapgood and defendant Duggins, at the instance of Reed and Cropper, guaranteed its performance. It also appears that on the 19th day of February, 1890, Cropper and Reed made another contract in writing with the plaintiffs, for the delivery of 5,000 other sheep, for the price mentioned, at the same places, between the 10th of July and the 10th day of August next thereafter, and that the performance of this contract was guaranteed by defendants Holbrook and Duggins, and that the plaintiffs paid Reed and Cropper $10,000 on the two contracts. It appears further that a contract in writing was made between plaintiffs and one Scott by which the former were to furnish the necessary funds for the execution of the contracts between them and.

Reed and Cropper, and to attend to and dispose of the sheep delivered on them; that Scott was to purchase and receive, and deliver them when sold; and that he was to receive one-third of the net profits. It also appears that the plaintiffs were not aware at the time the contracts were made that Scott was a partner of the defendants, and that the latter did not know of his interest with the plaintiffs, but did know that he was plaintiffs' agent in the purchase of cattle; and it appears that Holbrook or Duggins were not aware at the time the contracts were guaranteed, or later, when they indorsed the notes, that Scott was the agent of the plaintiffs, or interested with them in the contracts. It does appear that Reed and Cropper knew before they signed the notes that Scott was interested with plaintiffs in the contracts. It also appears that Scott was largely instrumental in securing the contracts, and that he represented to Reed and Cropper that he could buy the sheep to be delivered so that a profit could be realized, and that the defendants relied on him to make the purchases, the money being furnished by them. When Reed and Cropper wished to purchase they found the price of sheep higher than that for which they had contracted to sell. The defendants failed to deliver the sheep, and afterwards, in the latter part of July, 1890, the parties to the contract met to settle all matters in dispute with respect to the contracts and their breaches. It appears from the evidence that the plaintiffs had paid to Reed and Cropper on their contracts $10,000, and that plaintiffs had made contracts with other parties to resell the sheep to be delivered to them, and were compelled, in consequence of the failure of Reed and Cropper, to buy other sheep at enhanced prices, entailing a loss to them of $6,000, which was afterwards, by agreement, reduced to $5,000, no part of which Scott paid, or undertook to pay. The plaintiffs' claim against Cropper and Reed, as agreed upon, was $15,-

000. This was made up solely of the $10,000 above mentioned, and the $5,000 damages. It appears from the evidence that Scott had no interest in this $15,000. The account stood upon the settlement as follows:

Amounts due plaintiffs:

| | |
|---|---|
| Money advanced by Jungk & Fabian | $10,000 |
| Agreed damage due Jungk & Fabian for breach of the two contracts | 5,000 |
| Total | $15,000 |

Amounts received by plaintiffs:

| | | |
|---|---|---|
| Money and checks aggregating | $3,062 | 50 |
| Sheep | 1,075 | 40 |
| Eliza Moody check | 1,200 | 00 |
| Hapgood note | 500 | 00 |
| Total | $5,837 | 90 |

Notes received, and still remaining unpaid:

| | | |
|---|---|---|
| Three notes sued on in this action | $7,000 | 00 |
| Note made by Scott | 600 | 00 |
| Note made by D. C. Reed, G. W. Cropper, and S. W. Scott | 1,500 | 00 |
| Total | $9,100 | 00 |

This shows that the plaintiffs received back from the defendants Reed and Cropper $4,162 less than they advanced to them. The three notes sued on were given by Reed and Cropper for money due the plaintiffs from them. No part of it was due Scott. This the plaintiffs and Scott and the defendants Reed and Cropper agreed upon. The notes were signed: "D. C. Reed. G. W. Cropper." The firm name is not signed, and Scott's name does not appear. They evidently were intended to be the individual notes of the parties whose names were signed to them. An individual note of Scott to Reed and Cropper for $600 was taken by plaintiffs in the settlement from Reed and Cropper. This it appears the plaintiffs regarded as equal to any profits that might be due Scott on sheep

that were delivered to the value of $1,075.40. In the settlement the individual note of Reed and Cropper, indorsed by Scott, for $1,500, was taken by the plaintiffs. · It suf-. ficiently appears from the evidence that the understanding of the parties was that the notes sued on were the individual promises of Reed and Cropper to the plaintiffs, and that Scott was not responsible for them, and had no interest in them. They are not promises by one firm to another having a common member. They are simply promissory notes of Reed and Cropper to Jungk and Fabian, indorsed by Holbrook and Duggins. They were so treated and declared on by the plaintiffs, and the defendants, in failing to plead the non-joinder of Scott, admitted them to be such. Referring to the rule that forbids a suit by one firm against another firm, having a partner common to both, Bates says: "The principle does not apply to a note or· promise made by one firm to a person who is a partner in another firm having a common member with the debtor firm, but such promise is enforcable by the payee." 2 Bates, Partn. § 901. Conceding Scott was a partner of Jungk and Fabian, and also of Reed and Cropper, a suit at law may be maintained upon the notes given by Reed and Cropper individually or jointly to Jungk and Fabian alone. *Moore* v. *Gano,* 12 Ohio, 301; *Mahan* v. *Sherman,* 7 Blackf. 378; *Morris* v. *Hillery,* 7 How. (Miss.) 66; *Herriott* v. *Kersey,* 69 Iowa, 111; 28 N. W. Rep. 468; *National Bank* v. *Bank of Commerce,* 94 Ill. 271.

Defendants' counsel insist that the notes sued on were voidable because plaintiffs did not make known to them Scott's interest with the plaintiffs in the profits of the contracts, and because they were ignorant of it at the time the contracts were made. It is not enough that the defendants were ignorant of the fact at the time of making the contracts. If they knew of it at the time of making the notes they could not rely on the fact as a

defense to them; and, though Reed and Cropper were ignorant of such interest, they could not set it up as a defense, so far as the action was for money received from plaintiffs, and not returned or credited. The evidence shows that Reed and Cropper knew of Scott's interest with the plaintiffs in the profits at the time the notes were executed. As to Holbrook and Duggins the case is different. The jury were authorized to find from the evidence that they were, at the time the notes were indorsed, ignorant of Scott's interest with the plaintiffs. The indorsement of the notes by Holbrook and Duggins was, in effect, a continuation of their undertaking as guarantors of the contracts by the other defendants to deliver the sheep.

This brings us to the question, was the fact of Scott's interest with the plaintiffs in the profits of the contracts material, and did its existence increase the risk of the sureties? They had a right to presume that the contract which they undertook Reed and Cropper should perform had been negotiated by parties interested in obtaining the highest price obtainable by fair means. If not negotiated by such a person or persons, it was important that they should know it. And they had a right to expect that the parties whom they undertook should perform the contracts would be interested in executing them, not only so as to prevent loss, but so as to obtain a profit; that such performance would not be left to a man whose interest would be equal with the seller and the purchaser. And if they were to be performed by a man actuated by such motives, that was a material and important fact for such sureties to know. The risk of the guarantors would be increased by intrusting the performance of the contract to a party whose interest would be equally with both parties. Human motives prompt human actions, and among the strongest is self-interest. "Any concealment of material facts, or

any express or implied misrepresentation of such facts, or any undue advantage taken of the surety by the creditor, either by surprise, or by withholding proper information, will undoubtedly furnish a sufficient ground to invalidate the contract." 1 Story, Eq. Jur. 334. It follows that the evidence authorized a verdict for the defendants Holbrook and Duggins, and required a verdict against the defendants Reed and Cropper. There is no rule of law that will permit the latter to retain the $4,162 paid them by the plaintiffs, and which the evidence shows they have not paid back, or received credit for. Nor will the law authorize them to avoid the notes sued on because Scott was interested with the plaintiffs in the profits of the contracts, if any should be realized, because the evidence clearly establishes that they knew of such interest when they signed the notes. Under section 3340, 2 Comp. Laws Utah 1888, a verdict might have been found, and a judgment entered, against the makers of the notes, and for the other two defendants. A verdict for the makers of the notes was so clearly wrong as to authorize the inference that the jury was misstaken as to facts, or misled by the charge of the court.

The plaintiffs assign as error a paragraph of the charge of the court, as follows: "If at the time these contracts were made, Scott was a partner on both sides, the contracts were void, unless it was fully known by all the partners, and these sureties would not be liable on the contracts they indorsed unless they knew, also, that Scott was a partner on both sides." While the contracts might have been voidable as to the makers and guarantors if they did not know of such partnership, they were not void, and if the makers or guarantors, after they learned the fact, executed the notes in settlement of the damages claimed by the plaintiffs, that would be a waiver of the right to avoid them. It would be a ratification of them.

While other portions of the charge may have been misleading to the jury, we do not deem it necessary to consider this record further, as we are clearly of the opinion that the judgment of the court below must be reversed, and a new trial granted, for the reasons pointed out. The judgment is reversed, and the court below is directed to grant a new trial.

MINER, J., and BARTCH, J., concurred.