CARSON, PIRIE, SCOTT & CO. v. BYERS & EGGERS ET AL.

1. **Partnership:** LOAN OF MONEY ON OBLIGATION OF INDIVIDUAL PARTNERS: FIRM LIABILITY. Where money was borrowed for partnership purposes, but the notes and mortgage upon the firm property, given to secure the loan, were not executed in the firm name, but were signed by all the partners individually, *held* that the debt was a debt of the firm, and that the mortgage could not, on account of being so executed, be set aside at the instance of subsequent creditors of the firm.

2. **Mortgage:** TO SECURE SUM GREATER THAN DUE: BADGE OF FRAUD: EVIDENCE TO OVERCOME. When a mortgage is taken for more than is due from a person known to be insolvent, it is incumbent on the mortgagee to show that the mortgage was made in good faith and for honest purposes, and to satisfactorily show why an amount greater than the actual indebtedness was secured by the mortgage; (*Lombard v. Dows*, 66 Iowa, 243;) but in this case it appears that the mortgagee did not know that the mortgagors were insolvent, or approaching insolvency, and the evidence (see opinion) otherwise sufficiently overcomes the presumption of fraud arising from the excess of the amount secured.

3. **Fraud:** OBTAINING PREFERENCE IS NOT. A creditor has a right to to secure his debt in good faith, even if he knows that his debtor has other creditors who will by his act be hindered in the collection of their claims.

4. **Assignment for Benefit of Creditors:** WHAT IS NOT. A chattel mortgage made by partners, which does not include all the firm property, and which is not intended by any of the parties to operate as an assignment for the benefit of creditors, cannot be construed as an assignment.

*Appeal from Shelby District Court.*

MONDAY, DECEMBER 14.

THIS is a controversy involving the rights of the parties to the proceeds of the sale of a stock of goods of an insolvent mercantile partnership. The parties claiming said proceeds are P. K. Watters and Louisa Watters, mortgagees of the goods, upon one side, and a number of the general creditors of the firm, who claim that the mortgage is fraudulent and void as to them. The cause was tried as an action in equity,

and there was a decree against the mortgagees, and they appeal.

*Smith & Cullison* and *George Getty*, for appellants.

*Sapp & Pusey*, for appellees.

ROTHROCK, J.—I.   Some time previous to the month of September, 1882, H. W. Byers and Paul Eggers commenced negotiations with a view to forming a partnership in keeping a country store.   They at one time contemplated locating at Harlan, Shelby county.   Some time before September 1, 1882, they concluded to open a store at Earling.   They were both without means, excepting that Byers was possessed of a small amount of money, not exceeding $800 in all.   They applied to a sister of Eggers for a loan to enable them to start in business.   Preparations were made for embarking in the enterprise by commencing the erection of a store building. Eggers' sister loaned them $2,000.   The money was delivered to Eggers in the form of a draft on Chicago.   The same day the partners met in Harlan, and ordered a bill of goods of a traveling salesman for a Council Bluffs wholesale house. This was on Friday.   On the Monday following they went to Chicago to purchase a stock of goods.   They bought goods of the value of some $3,500, partly for cash and partly on credit.   On their return from Chicago they executed a promissory note to the sister of Eggers for the $2,000, due in five years, with interest at ten per cent per annum, and they then went to Earling and opened up their business in the name of Byers & Eggers.   In February, 1883, H. W. Byers sold his interest in the partnership to his brother, E. C. Byers, for $2,000, and E. C. Byers assumed the firm indebtedness.   In the meantime the sister of Eggers married P. K. Watters, and turned over to him the management of all her business in his name.   In March, 1883, E. C. Byers and Eggers borrowed of Watters an additional sum of $500,

and executed to him their note for that sum, and also one for $2,500, and gave him a chattel mortgage securing the payment of the notes. This mortgage was not acknowledged nor recorded. On May 1, 1883, Watters went to Earling with an attorney, and learned that F. K. Byers, wife of E. C. Byers, was a member of the partnership, and new notes and a new mortgage were then taken for the same amounts as in the first mortgage, due one day after date, and signed by all the members of the firm, and the old notes and mortgage were surrendered. The last mortgage was recorded on the second day of September, and on the same day it was placed in the hands of the sheriff for foreclosure, who took possession of the goods under the mortgage. At this time the partnership was owing some $3,000 or $3,500 to wholesale merchants in Chicago and elsewhere. Carson, Pirie, Scott & Co., commenced an action on one of these claims, and garnished Watters and the person in possession of the stock of goods. Other creditors intervened, and garnished the mortgagee and the sheriff. The garnishee Watters answered, setting up his mortgage, and denying any indebtedness to the partnership. The general creditors controverted the answer of the garnishee, and the action was tried upon these issues. Upon motion of the plaintiffs the cause was transferred to the equity calendar and tried as an action in chancery.

This motion was resisted by the garnishees, and the ruling of the court thereon is the first question presented by counsel for appellants. Counsel for appellees claim that this ruling cannot be reviewed, because no errors are assigned, and that, as the cause was tried in the court below on its merits, it must be so tried here. In the case of *Powers v. County of O'Brien*, 54 Iowa, 501, it was held that when a party in an equity case stands upon the ruling on a motion or demurrer, and appeals therefrom, errors should be assigned. Whether the rule in that case is applicable to the case at bar we need not determine, because the conclusion we have reached in this case renders the question immaterial to either of the parties;

and, as the case has already been twice tried in the court below, once to a jury and again by the court, it is preferable that it be determined here on it merits.

II.   As has already been stated, the note given by H. W. Byers and Paul Eggers to the sister of Eggers was for $2,000.

1. PARTNER-
SHIP: loan of
money on
obligation of
individual
partners: firm
liability.

The money for which the note was given constituted nearly the whole of the means of the firm with which to commence their business. That it was so used is not questioned. Counsel for the partnership creditors claim that, although Byers signed the note given for the $2,000, yet it was in fact the individual debt of Eggers. This claim finds but very little support from the evidence. The very great preponderance of the evidence is to the effect that the debt was the joint debt of both members of the partnership, and when the additional loan of $500 was made, and the mortgage given to secure that and the previous indebtedness, the notes and mortgage were executed by all of the members of the firm, as Watters, the payee and mortgagee, then supposed; and when the last notes and mortgage were given, all the members of the partnership joined in their execution. After a careful examination of the evidence, we have no doubt that the money for which the mortgage was given was a partnership debt. The fact that the mortgages and notes were not executed in the partnership name, is of but a small consequence in determining the rights of the parties. In *Berkshire Woolen Co. v. Juillard*, 75 N. Y., 535, it is said:   "But when the property is not only obtained for and applied to the benefit of the firm, but it is so obtained by the joint act and upon the joint written obligation of all its members, and the credit is given to all, the transaction is in substance a co-partnership transaction, though the firm name is not actually used in the writing, and though the partners have superadded to their joint obligation the several liability of each of them." This disposes of any alleged equitable claim set up by the partnership creditors as against the claim of Watters, the mortgagee; and

it will be understood that we do not pass upon the question whether the mortgage to Watters would be void as to the firm creditors, even if it had been given for the individual debt of one of the partners. Upon this question, see *City of Maquoketa v. Willey*, 35 Iowa, 323.

III.  It is claimed by counsel for appellee that the mortgage upon which the goods were seized and disposed of is

2. MORTGAGE: to secure sum greater than due: badge of fraud: evidence to overcome.

fraudulent as to the other creditors of the partnership.  It is claimed that it is void because it was made with the intent to hinder, delay and defraud the other creditors.  We do not think this proposition is sustained by the evidence.  It is true that both mortgages were taken for more than was due; and, when a mortgage is taken for more than is due from a person known to be insolvent, it is incumbent on the mortgagee to show that the mortgage was executed in good faith, and for honest purposes, and to satisfactorily explain why an amount greater than the actual indebtedness was secured by the mortgage. *Lombard v. Dows*, 66 Iowa, 243.  We think the mortgagee in this case has made such showing.  When the first mortgage was taken its amount was nearly $500 in excess of the actual indebtedness.  The evidence shows that at that time Watters did not know that Byers & Eggers contemplated insolvency, or that they would be unable to continue in business and prosper.  They represented to him that they were in need of $500, which he let them have; and, in view of the fact that they might need further assistance, the mortgage was made somewhat greater than the debt, so that Watters could furnish them the additional sum without the necessity of giving further security.  It does not appear that Watters then had any knowledge that Byers & Eggers intended, by giving the mortgage, to hinder, delay, or defraud their creditors.  When the last mortgage was taken, the same amount was named therein as in the first mortgage.  Some interest had accrued on the debt, and the excess over the true indebtedness was $360.  Now, it appears from a pre-

ponderance of the evidence that this excess was included in the last mortgage by mere oversight. There was no fraudulent purpose or intention upon the part of any of the parties thereto, so far as the amount of the mortgage was concerned. Watters was intent only on securing the indebtedness actually due to him, and had no purpose to aid the partnership in any way to prejudice other creditors. There was no collusion between Watters and Byers & Eggers. The record shows very clearly that Eggers knew nothing about the business of the firm. He had no design to cheat or defraud any one. He appears to have been entirely under the management and control, first of H. W. Byers, his first partner, and afterwards of E. C. Byers, his last partner. So far as the intention of E. C. Byers in giving the mortgage is involved, he acted without any collusion with Watters. On the contrary, he gave the mortgage reluctantly, and only because Watters persistently demanded it. We are satisfied from the evidence that the mortgage was not fraudulent as to the other creditors of the firm. A creditor has the right to secure his

3. FRAUD: obtaining preference is not. debt in good faith, even if he knows that his debtor has other creditors, and knows that the effect will be to prevent other creditors from collecting their claims.

It is urged by counsel for appellees that the mortgage operated as a general assignment for the benefit of creditors,

4. ASSIGNMENT for benefit of creditors: what is not. which preferred one creditor to another, and that it is void under section 2115 of the Code. We do not think this position is sound. It did not operate as a general assignment, because it did not include all of the property of the firm, and none of the parties intended at the time that the mortgage was made that it should be operative as an assignment. For aught that appears, it was supposed at the time that the store would be carried on as before.

Our conclusion is that there should have been a decree dismissing the action and the petition of intervention as to the garnishees.          REVERSED.