SPOONER R. HOWELL, Admr.

*v.*

THOMAS T. MOORES.

*Filed at Ottawa January 25, 1889.*

1. INSOLVENT DEBTORS—*assignment for the benefit of creditors—prior to act of 1877.* The provisions of an act concerning voluntary assignments, and conferring jurisdiction therein upon county courts, which took effect July 1, 1877, have no application to an assignment by an insolvent debtor or debtors made before that act took effect.

2. SAME—*assignment by partnership firm, and by the individual partners—rule of distribution.* Where co-partners make an assignment of their individual and firm property for the benefit of their creditors, in the absence of statutory regulations the assignee will be justified in making such distribution as the assignment calls for, there being no proof of any fraud or improper conduct either in the making of the deed or in the carrying out of its provisions.

3. A and B, composing a partnership firm, made an assignment, in January, 1877, of all the partnership and individual property, to an assignee, for the benefit of their creditors, both of the firm and of the individual partners. The schedule of debts, made a part of the deed of assignment, described three notes, of $500 each, signed severally by each partner, in his own name, as partnership or firm debts. The assignee, in distributing the proceeds of the assets of the firm and of the several partners, treated such notes as firm obligations, and paid dividends on them out of the partnership assets: *Held*, on bill seeking to hold the assignee's estate liable for not applying the proceeds of the estate of the several partners on such notes, that he was justified in acting as he did under the instrument which defined his powers and duties, and that his estate was not liable for his not applying the assets of the several partners upon the notes.

4. SAME—*compensation of assignee.* An assignee's account, in the case of a voluntary assignment to him for the benefit of creditors, showed

credits for his services in excess of that allowed by law for similar services by administrators and executors. On bill filed for an accounting, the master in chancery reduced the assignee's compensation so as to make it the same as that allowed to administrators and executors: *Held,* that the deduction was proper.

5. JURISDICTION—*concurrent—which shall prevail.* In cases of concurrent jurisdiction, the court which first obtains jurisdiction will have the precedence.

6. SAME—*in chancery—in the matter of trusts, generally.* The 12th section of article 6 of the constitution of 1870, gives the circuit courts original jurisdiction of all cases in law and equity, and the legislature has no power to deprive the circuit courts of their equitable jurisdiction in suits to enforce trusts.

7. The jurisdiction of a court of equity for enforcing trusts is not taken away by the fact that a party has a remedy at law, especially when the person seeking relief is entitled to a discovery, or where the trustee is bound to state an account of the trust fund and its proceeds.

8. SAME—*administration of estates—probate courts and courts in chancery.* The sixth clause of section 70 of the "Act in regard to the administration of estates," which gives the county or probate court jurisdiction of claims against estates, when the decedent has received money in trust for any purpose, can not be regarded as conferring upon those courts exclusive jurisdiction. Their jurisdiction is concurrent with that of courts of equity.

9. SAME—*assignment for benefit of creditors—jurisdiction in chancery.* A court of equity will entertain jurisdiction to enforce the trust created by an assignment of a debtor for the benefit of creditors, at the suit of one or more of such creditors. The death of the assignee will not deprive the creditor of his right to go into such court to enforce the trust and obtain an accounting.

10. An assignment was made by debtors for the benefit of creditors, prior to the time the act relating to voluntary assignments took effect. The assignee died without having made an account and paying out all the moneys received by him from the estate of the insolvents. A creditor of the insolvents held a claim which was unpaid, and which he had not filed against the assignee's estate. It was *held,* that the creditor might maintain a bill in equity against the personal representative of the assignee for an accounting and enforcement of the trust.

11. PARTNERSHIP DEBT—*what constitutes.* Although the several members of a partnership firm sign a note with their individual names, and not by the name of the firm, if it in fact is for a partnership object it will be treated as a partnership debt, in marshaling the assets, as between firm and individual creditors.

12. SAME—*evidence—to show the obligation to be for a partnership debt.* In case of an assignment by the members of a firm, of their partnership and individual property, for the benefit of their creditors, a note which, on its face, appears to be the individual obligation of one or more of the partners, may be shown, by parol evidence, to have been given for a firm debt; and where there is no such proof, the description of such a note as a firm debt, in the deed of assignment, will be sufficient evidence of that fact to warrant the assignee in distributing the funds accordingly, when no objection is made to such action by the owner of the note, or notice by such owner that the note is the individual obligation of the several partners.

13. COVENANTS FOR TITLE—*statutory form.* When a conveyance of land, in the statutory form prescribed in section 9 of the Conveyance act, contains the words "conveys and warrants," it will be held to be a deed with covenants of seizin, against incumbrances, and for quiet possession, etc., as specified in that section.

14. VENDOR AND PURCHASER—*pre-existing incumbrance—agreement by vendor to protect against it.* Where one conveys land which is subject to a mortgage, and afterward gives his grantee a bond, that the grantor will pay, or cause to be paid, all liens against the land, whether by mortgage or otherwise, within a given time, the grantee will not be bound to pay the incumbrance, but may rely on its payment by the obligors in his bond.

15. SAME—*measure of damages—for breach of bond to discharge incumbrance.* Where the grantor of land, by a warranty deed, gives to his grantee a bond, conditioned that he will discharge and satisfy a mortgage thereon within a given time, the executory contract embodied in the bond will be a security independent of the covenants in the deed, and for its breach the obligee will be entitled to recover such damages as are the necessary, natural and proximate result of such breach. The measure of his damages when the title is lost by foreclosure sale under the mortgage, will be the actual consideration which he paid for the land, with six per cent interest thereon from the time of eviction.

16. In this case, the purchaser of a tract of land July 1, 1874, conveyed to his grantor, as the purchase price, two town lots, then worth $500, and gave his note for $1000. The deed recited $2000 as the consideration. The prior grantor gave the purchaser a bond, in the sum of $2000, conditioned that the former should pay off and discharge all liens on the land, by mortgage or otherwise. The land was sold under a pre-existing mortgage, and the purchaser was evicted in 1878. In a suit to fix the liability of the grantor, the court ordered the purchaser's note of $1000 to be returned, and in addition gave him as damages $500,—the value of the lots,—with six per cent interest thereon from July 1, 1874: *Held,* that the interest on the $500 should not have been allowed from July 1, 1874, but only from the time of the eviction, in 1878.

17. EVIDENCE—*books of account—debits and credits both to be consid-
ered.* On bill by creditors against the estate of a deceased assignee of
the debtors, the only evidence of the state of the account was the en-
tries in the assignee's books. The court charged the estate with all the
debits in the account, and allowed only a portion of the credits, with-
out any testimony discrediting any items of the account: *Held,* that
the assignee's books should have been received as an entirety, and ac-
cepted as a whole, or not at all.

18. Where a complainant introduces in evidence the books of an-
other for the purpose of charging his estate, the former is bound to
admit those items or entries which make against him as well as those
which operate in his favor, unless he can show that the items to his pre-
judice have been improperly inserted.

19. SAME—*as to consideration of a conveyance of land.* The recital
in a deed for land of the consideration paid, is *prima facie* evidence
that it is the true sum paid; but as between the grantor and grantee
this recital will not be conclusive evidence of the consideration. The
actual sum may be shown by parol evidence to be different from that
expressed in the deed.

APPEAL from the Appellate Court for the First District;—
heard in that court on appeal from the Circuit Court of Cook
county; the Hon. M. F. TULEY, Judge, presiding.

On January 13, 1877, Sylvanus Town and Henry B. Town,
of Aurora in Kane County, composing the firm of S. Town
and Son, made a general assignment for the benefit of their
creditors to Isaac M. Howell, as assignee, therein conveying
all their property, real and personal, and partnership and in-
dividual. Howell accepted the trust and, before his death,
sold the realty and personalty, described in the schedules
attached to the deed of assignment, which was recorded on
January 15, 1877. He died intestate on November 7, 1881,
and, about sixty days thereafter, Spooner R. Howell, the ap-
pellant herein, was appointed administrator of his estate.

The bill in this case was filed in the Circuit Court of Cook
County on July 24, 1883, by the appellee, Moores, as a cred-
itor of Sylvanus and Henry B. Town, on behalf of himself and
all the other creditors both of the firm and of each member of
it, against appellee, as administrator of the deceased assignee,

charging that the assignee failed to pay over, or account for the proceeds of the sales made by him either to the firm or individual creditors, but wrongfully retained or converted the same to his own use, or otherwise wrongfully appropriated or applied the same, and that the administrator since his death has also failed and refused to account, and praying for a discovery and an accounting, and for the payment, in due course of administration, of appellee's claims, as set out in his bill, and of those of the other creditors, who may come in and offer proofs, etc.

The deed of assignment provides that, after the assignee has converted the assets into money, he shall retain out of the proceeds his lawful fees and disbursements, and pay to the creditors of the firm of S. Town & Son so much of the residue of said proceeds as shall be realized from the assets of said firm, and, if such residue shall be insufficient to pay said creditors in full, then the same shall be divided among them *pro rata*, etc., and the share of such proceeds as shall be realized from the sale of the individual property of either the said Sylvanus Town or Henry B. Town, shall be applied first, in payment of the private debts of each in proportion to his share in such proceeds, and if more than sufficient to pay such debts in full, the residue shall be applied in payment of the debts of said firm.

The answer denies the charges of the bill and avers that all the proceeds of the sales of the assets were applied faithfully to the payment of the firm and individual creditors after deducting lawful fees and disbursements.

The cause was referred to the master, who took proofs and made report and gave notice to the creditors to come in by a certain day and prove up their claims. No creditors except appellee responded to this notice, and no claims except those of appellee were presented. The Master found in his report, that there was due to the complainant, upon the notes hereinafter mentioned the sum of $2753.60, and, upon the bond herein-

after mentioned, the sum of $1515.00, making a total of $4268.60; that the amount so due on the bond was the individual indebtedness of Sylvanus Town; that the amount so due on the notes was the individual indebtedness of Sylvanus and also of H. B. Town; that there was due to complainant from the estate of Isaac M. Howell the sum of $2662.62. The circuit court confirmed the report and decreed that complainant recover of said estate said sum of $2662.62 to be paid in due course of administration. This decree has been affirmed by the Appellate Court, and the case is brought here by appeal from the latter court.

The only evidence produced before the Master as to the receipts and disbursements of the assignee was a book kept by the latter in his life time and found among his papers after his death by the administrator. This book contains certain debit and credit entries, which are in the handwriting of the deceased assignee. The debit entries show that the assignee realized from all the assets, partnership and individual, the sum of $3183.24 between January 19, 1877, and March 11, 1879. It is conceded that the property was sold in a legal and proper manner, and that the amounts stated in said debit account are reasonable amounts resulting from such sales.

Of this sum of $3183.24 $2668.90 was realized from the individual property of Sylvanus Town, $252.50 from the individual property of Henry B. Town, and $261.84 from property of the firm of S. Town & Son.

The credit entries show that, between January 15, 1877, and May 10, 1881, the assignee paid out to the creditors of the firm, to the creditors of Sylvanus Town, to the creditors of Henry B. Town, and, for the expenses of the assignment, the total sum of $2885.30, leaving a surplus of $297.94 in his hands unaccounted for.

The sum of $2662.62 is arrived at by deducting certain items of disbursement for the expenses of the assignment, and two certain payments made upon the notes above mentioned,

from the sums of $2668.90 and $252.50, and charging the estate of the assignee with interest on the balance from the date fixed upon as the date of the refusal to pay, to the date of the report. In other words, of the sum of $2885.30, with which the assignee credits himself in his book, the report of the master allows only the sum of $1340.50; that is to say, $1097.81 for expenses and $242.69 paid on said notes. The balance of the credits in the book, amounting to the sum of $1544.80, are disallowed.

The sum of $2753.60 found to be due the complainant is the amount of three judgment notes of $500.00 each, together with interest on the same, less certain payments endorsed on the notes. These notes are dated respectively October 18, 1876, November 20, 1876 and November 22, 1876. The following is a copy of each: "Ninety days after date, for value received, we or either of us promise to pay to the order of the First National Bank of Aurora Five hundred dollars with interest after due at ten per cent. SYLVANUS TOWN, HENRY B. TOWN."

Each note is endorsed by the Bank and by S. W. Thatcher "without recourse."

The indebtedness, claimed by the appellee to be due to him upon the bond hereinbefore referred to, arises out of the following facts:

By a warrantee deed, dated June 1, 1874, and recorded June 11, 1874, Sylvanus Town and his wife sold and conveyed to the appellee $26\frac{88}{100}$ acres of land in Kane County, the consideration expressed in the deed being $2000.00. The deed is silent about the existence of any incumbrance. As matter of fact, however, there was upon the land at that time a mortgage, dated April 22, 1872, recorded August 27, 1872, executed by Sylvanus Town and wife to Mary E. Brogden to secure a note of same date of $1000.00, made by Sylvanus Town and payable in two years, etc. The mortgage contained

a power of sale, authorizing the mortgagee to sell the premises upon default, etc., after advertising notice of sale in a newspaper, etc. On June 8, 1874, Sylvanus and Henry B. Town executed and delivered to appellee a bond of that date in the penal sum of $2000.00, conditioned that Sylvanus Town should "well and truly perform, fulfill and keep each and all of the covenants, conditions and agreements specified and conditioned as contained in" said warrantee deed, etc. The bond for $2000.00 and the Brogden note and mortgage are described in the schedule to the assignment as individual liabilities of Sylvanus Town. The mortgage not having been paid the mortgagee, after due notice given, sold the premises, under the power in the mortgage, on July 3, 1877, at public sale to Sarah Brogden, and executed to the latter, as purchaser, a mortgagee's deed, dated July 3, 1877, recorded March 14, 1878. By quit claim deed, dated September 26, 1877, recorded March 14, 1878, the property was conveyed to S. W. Thatcher by Sarah Brogden. By quit-claim deed dated November 1, 1877, S. W. Thatcher sold and conveyed the $26\frac{88}{100}$ acres to O. D. Howell. In an action of forcible entry and detainer begun on May 17, 1878, before a Justice of the Peace in Kane County by O. D. Howell against appellee, in which the latter was duly served, a judgment was rendered, on May 24, 1878, against appellee, ordering that the plaintiff therein "have and recover possession of the lands, etc., and that he have a writ of restitution therefor," which writ was issued on May 31, 1878. It is admitted that appellee, after this, surrendered possession of the premises to O. D. Howell, counsel for appellant contending in their brief that appellee moved away the house he had built upon $2\frac{1}{2}$ acres of the tract of $26\frac{88}{100}$ acres.

Appellee paid for the $26\frac{88}{100}$ acres, so conveyed to him, by deeding to Sylvanus Town two lots in Aurora, known as the Rose street lots, and by giving to said Town his note for $1000.00, dated June 1, 1874, payable eight years after date, etc. This note is described in the schedule to the assignment

as a part of the personal assets of Sylvanus Town, and passed into the hands of the assignee, and, after his death, into the possession of appellant as administrator.

The warrantee deed from Sylvanus Town to appellee is in the statutory form, containing the words "conveys and warrants."

The court below found that appellee had lost the tract of $26\frac{88}{100}$ acres by reason of the mortgage sale and the proceedings above set forth, and was entitled to recover $2000.00, the consideration named in the deed, and accordingly decreed that appellant should deliver up to appellee the note for $1000.00, so executed by him to Sylvanus Town, in discharge of one half of the $2000.00, and that appellee was entitled to recover the remaining sum of $1000.00 with interest, amounting altogether to $1515.00.

Mr. MASON B. LOOMIS, for the appellant:

A court of equity will not ordinarily interfere with the administration of estates, but when it does it will take cognizance of the whole administration. 1 Story's Eq. Jur. sec. 543 a; *Freeland* v. *Dazey*, 25 Ill. 294; *Garvin* v. *Stewart's Heirs*, 59 id. 229; *Huestis* v. *Johnson*, 84 id. 61; *Crain* v. *Kennedy*, 85 id. 340; *Harding* v. *Shepard*, 107 id. 264; *Wood* v. *Johnson*, 13 Bradw. 549.

·In the settlement of estates, the county court has jurisdiction to adjudicate upon equitable demands. *Wilson* v. *Kirby*, 88 Ill. 573; *Moore* v. *Rogers*, 19 id. 349; *Dixon* v. *Buell*, 21 id. 203; *Moline Water Power* v. *Webster*, 26 id. 233; *Hurd* v. *Slaten*, 43 id. 348; *Hales* v. *Holland*, 92 id. 498; *Wadworth* v. *Connell*, 104 id. 370.

In cases where a court of equity has concurrent jurisdiction with a court of law, the court which first acquires jurisdiction must hold and exercise it until the litigation is ended. *Whitney* v. *Stevens*, 97 Ill. 482; *Mason* v. *Piggott*, 11 id. 85.

The law may be regarded as settled in this State, that a court of equity will not assume jurisdiction of a claim against

an estate until the claimant shall have exhibited his claim and had it allowed in the county court; and then, if any special reasons that may be deemed sufficient can be assigned why that court can not afford the requisite relief, equity will assist him, but not otherwise. *Harris* v. *Douglas,* 64 Ill. 466; *Blanchard* v. *Williamson,* 70 id. 651; *Armstrong* v. *Cooper,* 11 id. 561; *Freeland* v. *Dazey,* 25 id. 294; *Barnard* v. *Barnard,* 119 id. 93.

On a breach of covenant against incumbrances, the grantee can only recover such damages as he has actually sustained. If by it the title has failed, and the premises have been lost, he may recover to the full extent of the covenant; or, if he has removed the incumbrance, he may recover the sum paid for that purpose, unless it exceeds the limit of the covenant. But if he has not been disturbed in the title, and has paid nothing to remove the incumbrance, he can only recover nominal damages for the breach. If, however, eviction has taken place, he may recover substantial damages. *Willetts* v. *Burgess,* 34 Ill. 495; *Brady* v. *Spurck,* 27 id. 479; *Kirkendall* v. *Keogh,* 2 Bradw. 492; Rawle on Covenants for Title, 288.

So upon the covenant of warranty, it was necessary not only to prove a want of title, but an eviction also. *Moore* v. *Vail,* 17 Ill. 185; *Bostwick* v. *Williams,* 36 id. 65; *Jones* v. *Warner,* 81 id. 344.

The fact that each partner individually signed the notes, does not necessarily render them individual obligations. Bump on Bankruptcy, (9th ed.) 244; *In re Warren,* 2 Ware, 322; 1 Parsons on Notes and Bills, 131; *Bank* v. *Case,* 8 B. & C. 427; *Maynard* v. *Fellows,* 43 N. H. 255; *Carson* v. *Byers,* 67 Iowa, 606; *Patch* v. *Wheatland,* 8 Allen, 102.

The assignee, finding the notes scheduled as firm liabilities, had a right, in the absence of notice to the contrary, to treat them as such. *Goodwin* v. *Mix,* 38 Ill. 115; Burrill on Assignments, sec. 462.

The actual value of the property delivered for the deed is the measure of damages. 3 Washburn on Real Prop. *673, note 1; *Dayton* v. *Warren*, 10 Minn. 237; *Bingham* v. *Weiderwax*, 1 Comst. 513; *McCrea* v. *Purmont*, 16 Wend. 460; *Morse* v. *Shattuck*, 4 N. H. 229; *Belden* v. *Seymour*, 8 Conn. 304; Cowen & Hill's Notes, 1441, 1442.

The appellee, by giving in evidence the assignee's books, was bound to admit the items of credit as well as those of debit. *Frink* v. *Cole*, 5 Gilm. 339; *Moore* v. *Wright*, 90 Ill. 470; 1 Greenleaf on Evidence, sec. 201.

If a defendant makes out a written statement of what he considers to be the plaintiff's claim upon him, and on the same paper draws out a counter-claim on his own part, if the plaintiff seeks to make use of the statement as evidence against the defendant, the latter is entitled to have the counter-claim also laid before the jury. 1 Phillips on Evidence, *411; *Randle* v. *Blackburn*, 5 Taunt. 245; *Walden* v. *Sherman*, 15 Johns. 409; *Wakeman* v. *Marquand*, 5 Mart. Lou. (N. S.) 265.

The party introducing or using the books in evidence, thereby makes them evidence for the opposite party. *Dewey* v. *Hotchkiss*, 30 N. Y. 497; *Veiths* v. *Hagge*, 8 Iowa, 191; *Jones* v. *Jones*, 4 Hen. & Munf. 447; 1 Phillips on Evidence, *387, note.

An account is composed of items, and they are placed on the debit and credit sides. If the defendant produce the account, you can no more take the items on the credit side to charge him, and reject the debits, than you can take his acknowledgment of what was agreed to be paid, and reject what he states with respect to the condition. *Morris* v. *Hurst*, 1 Wash. C. C. 443.

An admission of the plaintiff's account by the defendant, at the same time producing and claiming one of equal amount against the plaintiff, must be taken together. *Jacobs* v. *Farral*, 2 Hawks, 570.

Mr. R. G. MONTONY, and Mr. A. C. LITTLE, for the appellee:

As to the jurisdiction of a court of equity, see *Rosenthal* v. *Magee,* 41 Ill. 370; *Wells* v. *Miller,* 45 id. 33; *Dickey* v. *Reed,* 78 id. 261; *Darling* v. *McDonald,* 101 id. 370; Const. 1870, art. 6, sec. 12; *Clapp* v. *Emery,* 98 Ill. 523.

As to the right to recover under covenants of warranty, see *Beebe* v. *Swartwout,* 3 Gilm. 162; *Moore* v. *Vail,* 17 Ill. 185; *Brady* v. *Spurck,* 27 id. 479; *Claycomb* v. *Munger,* 51 id. 373; *Bostwick* v. *Williams,* 36 id. 65; *Jones* v. *Warner,* 81 id. 343; *Stewart* v. *Drake,* 4 Halst. 139; Rawle on Covenants, 283, 284, 315; *Day* v. *Chism,* 10 Wheat. 449; *Ohling* v. *Luitjens,* 32 Ill. 23.

As to the measure of damages on the covenants and bond, see Rawle on Covenants, (2d ed.) 155, 164, 168.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

The assignment mentioned in this record was executed in January 1877. The present "Act concerning voluntary assignments, and conferring jurisdiction therein upon county courts," did not go into effect until July 1, 1877. Therefore, the provisions of that act have no application to the questions involved in the present discussion.

It is insisted by the appellant, that a court of chancery has no jurisdiction to entertain a bill of this character. By the terms of the assignment now under consideration, the property was conveyed to the assignee in trust to convert the same into money and pay the creditors. The enforcement of trusts is peculiarly within the province of a court of equity. Such a court will entertain jurisdiction to enforce the trust, created by an assignment for the benefit of creditors, at the suit of one or more of such creditors.

There can be no doubt that the appellee could have filed this bill for an accounting against Isaac M. Howell, as assignee, in his lifetime. The death of the assignee does not deprive

the creditor of his right to go into a court of equity to enforce the trust and obtain an accounting. Such money belonging to the assigned estate, as Howell had in his possession when he died, went into the hands of his administrator. The administrator took the assets charged with the same trust, to which they were subject, while under the control of Howell in his lifetime.

It is contended, however, that appellee could have filed his claims in the Probate court against the estate of Isaac M. Howell under section 70 of the "act in regard to the administration of estates." (Starr & C. Stat. page 219). That section provides that all demands against the estates of deceased persons shall be divided into seven classes, the sixth of which is as follows : "where the decedent has received money in trust for any purpose, his executor or administrator shall pay out of his estate the amount thus received and not accounted for."

The sixth clause of section 70 can not be regarded as conferring exclusive jurisdiction upon the Probate court. The twelfth section of article 6 of the constitution of 1870 provides, that "the circuit courts shall have original jurisdiction of all cases in law and equity." A case, which has for its object the enforcement of a trust, is a case in equity. The legislature has no power, under the constitution, to deprive the circuit courts of their equitable jurisdiction. Therefore, the jurisdiction, conferred upon the county or probate court by the clause above quoted, must be held to be concurrent only with the previously existing jurisdiction of the circuit courts in matters of trust. In cases of concurrent jurisdiction the court, which first obtains jurisdiction, will have precedence. Appellee never filed his claims in the probate court, and, therefore, that court can not be said to have first acquired jurisdiction of the subject matter of this suit, if it should be conceded that it had the power to grant the relief sought by the present bill.

"The jurisdiction of a court of equity for enforcing trusts is not taken away by the fact that the party has a remedy at

law, especially where the party seeking relief is entitled to a discovery, or where the trustee is bound to state an account of the trust fund and its proceeds."

The views thus far expressed are sustained by the following authorities: *Clapp et al. Admrs.* v. *Emery,* 98 Ill. 523; *Gibson et al.* v. *Rees et al.* 50 id. 383; *Darling et al.* v. *McDonald,* 101 id. 370; *Harris* v. *Douglas et al.* 64 id. 466; Burrill on Assignments, (4th ed.) pages 737, 689, 708; Pomeroy's Eq. Jur. secs. 276, 279, 280, 187, 994, 351, 1154 (n. 2); *First Congregational Society in Raynham* v. *Trustees,* 23 Pick. 148; *Clark* v. *Henry's Admr.* 9 Mo. 336; *Oliveira* v. *University,* 1 Phillip's Eq. Rep. (N. C.) 69.

We are of the opinion, that the objection to the jurisdiction of the Circuit Court is not well taken.

The assignee's account shows that his receipts exceeded his disbursements by the sum of $297.94. The report of the Master deducts $243.04 from the compensation of the assignee, as fixed by the latter in his account. The compensation as thus reduced is the same as that allowed by law for similar services to administrators and executors. We think this deduction was proper. The estate of the assignee is justly chargeable with the two sums of $297.94 and $243.04, aggregating $540.98, together with interest thereon at six per cent per annum from March 11, 1879, the latest date at which any of the proceeds of the sales of the assigned property are shown to have come into his hands.

We see no reason why the disbursements, with which the assignee credits himself, after deducting therefrom the overcharge for services as above explained, should not have been allowed by the master.

The assignee's account shows that he paid out $115.00 to the creditors of H. B. Town upon the Carr and Dickson notes, and $389.16 to the creditors of Sylvanus Town upon the Brogden and Wheat notes. These payments were properly made out of the respective funds realized from the individual assets

of the two partners.  In the schedules attached to the assign-
ment, the Carr and Dickson notes are mentioned as debts of
H. B. Town, and the Brogden note is mentioned as a debt of
Sylvanus Town.  We do not find the Wheat note named in
the schedules.  But the assignment contains this provision:
"If any debt is by mistake omitted, it is nevertheless to share
in the proceeds of the assigned estate."  There is nothing to
show, that Wheat was not a creditor of Sylvanus Town, or
that the payment of the Wheat note was not a legitimate dis-
bursement.

The account book of the assignee was introduced by the com-
plainant.  In the accounting, the assignee's estate is charged
with all the monies shown on the debit side of his account to
have been received by him.  Items aggregating $1340.50 are
picked out from the credit side of the account and allowed.
So far as we can find, there is no more proof sustaining the
credit items which are allowed, than there is in favor of the
credit items which are disallowed.  There is no testimony dis-
crediting any of the items in the assignee's book.  The only
witness, who refers to any of them, is Henry B. Town, and
his evidence, as far as it goes, tends to sustain their correct-
ness.  The entries in the book are the only proof in regard to
the receipts and disbursements by the assignee.  Sylvanus
Town had died before the accounting was had before the master.

It is not allowable for the complainant to introduce one
entire account and use the debit side and a part of the credit
side as evidence, and ignore all the balance of the credit side,
there being no testimony outside of the account to discredit
any of its items.  The account in the book is an entirety and
must be accepted as a whole or not at all.  Viewed as an ad-
mission by the assignee, it must be taken with the qualifica-
tions, which accompany the admission.  In *Frink* v. *Cole*, 5
Gilm. 339, we said: "The complainant called for and intro-
duced the books in evidence, and he was bound to admit those
items, which made against, as well as those which operated

6—127 ILL.

in his favor, unless he could show, that the items to his prejudice had been improperly inserted." (*Moore* v. *Wright*, 90 Ill. 470; *Morris* v. *Hurst*, 1 Wash. C. C. Rep. 433; *Jacobs* v. *Farrall*, 2 Hawks, 570; *Veiths* v. *Hagge*, 8 Iowa, 191.)

The remainder of the disallowed credits is shown by the account in the book of the assignee to have been paid out by him in the form of dividends to the creditors of the firm of S. Town & Son. We now reach the main theory, upon which the accounting in the court below was based. It is not denied, that the assignee paid these monies upon the firm debts, but it is charged that such application of them was improper, upon the alleged ground that, being derived chiefly from sales of property belonging to the individual partners, they should have been used in paying the individual debts and not the firm debts. It is claimed that the assignee should have applied the funds, realized from the individual assets, to the payment of complainant's two claims, it being contended that such claims are individual and not firm indebtedness.

The notes of $500.00 each, which contain the words, "we or either of us promise to pay" etc., are claimed to be the individual indebtedness of each of the partners. The obligation is certainly joint as well as several. It is not universally true, when a contract appears on its face to be the separate contract of one partner, that it will not be binding on the firm if it is understood to be, and is, in fact, for the benefit of the firm. "When a partnership consists of two persons, and they both sign a note with their individual names and not by the name of the firm, if it be in fact for a joint or partnership object, there would seem to be strong reasons for putting it, in the marshaling of securities, to the partnership account." (*In re Warren*, 2 Ware, 322; Bump on Bankruptcy, (9th ed.) page 245; *Maynard* v. *Fellows*, 43 N. H. 255; *Carson* v. *Byers*, 67 Iowa, 606; 1 Parsons on Notes and Bills, 131.)

In the present case, the deed of assignment contains the following language: "The co-partnership debts of said firm

and the private debts of Sylvanus and Henry B. Town are set forth and described in a schedule hereto attached, marked schedule B and made a part of this deed." When we turn to Schedule B, we find the three notes of $500.00 each described under the following heading: "Copartnership debts due from said firm of S. Town & Son, towit" etc. The assignors thus designated these notes as firm debts. The assignee, acting under the instrument, which defined his powers and duties, treated the notes as partnership obligations and paid dividends upon them as upon the other partnership obligations. The Bank, which was then the holder of the notes, accepted the dividends, and made no claim to larger payments, as being the owner of an indebtedness against the individual partners. In his account book the assignee arranges the payments upon these notes among the dividends paid upon the firm indebtedness of Town & Son.

The question is not, whether the notes may not be construed upon their face to be the several obligations of the individual partners, but whether the estate of the assignee shall be required to account for monies, which the assignee in his life time distributed in good faith among the creditors of the firm, treating the holder of these notes as a firm creditor in compliance with the directions of the assignors themselves. It is to be observed that, after the assignment was made, four years and two months passed before the death of the assignee, and six years and six months elapsed before the filing of this bill. However rigidly the rule contended for may be applied where the law marshals and distributes the individual and copartnership assets of the different members of a firm, yet when the copartners undertake to administer their own funds, as they do when they make an assignment for the benefit of their creditors in the absence of statutory regulations, the assignee is justified in making such distribution as the assignment provides for, there being no proof of any fraud or improper conduct either in the making of the deed or in the carrying

out of its provisions. (Burrill on Assignments, (4th ed.) pages 193 and 295.) We are, therefore, of the opinion that the appellant as administrator should not be required to repay the monies distributed among the firm creditors, simply because such funds were not applied as individual assets upon the notes in question. (*Lill* v. *Egan*, 89 Ill. 609.)

In support of the decree below, reference has been made to the case of *The National Bank* v. *Bank of Commerce*, 94 Ill. 271. We do not regard the views here expressed as being in conflict with that case. There a firm, consisting of five members, made an assignment of their firm property, and three of the members each made a separate assignment of his individual property; a note was made by these three members alone to the order of the firm, and endorsed by the firm to the Bank, but was not mentioned at all in the schedules attached to the assignments.

The authorities already cited hold that, where a note is on its face the individual obligation of one or more of the partners, it may be shown by parol proof to have been given for a firm debt. While there is no proof that the notes in this case were given for firm debts, yet their description as firm debts in the assignment was sufficient evidence of that fact to warrant the assignee in distributing the funds accordingly, there being no objection to such action on his part by the owner of the notes, and no notice to him by such owner, that the latter regarded the indebtedness as an individual liability.

The next question relates to the indebtedness upon the bond. The warrantee deed from Sylvanus Town to appellee must be held to be a deed with covenants of seizin, against incumbrances, and for quiet possession, etc., as specified in section 9 of the Conveyance Act. We do not, however, deem it necessary to discuss the points made by counsel in their able and elaborate arguments upon these covenants, and upon the doctrines of actual and constructive eviction.

The bond for $2000.00, in addition to the provision in regard to performing the covenants of the deed, contains the following language: "To him, the said Thomas T. Moores, his executors, administrators and assigns, we bind ourselves, our administrators, executors and assigns, that we will pay or cause to be paid all liens against the above described $26\frac{88}{100}$ acres, whether by mortgage or otherwise, at this time standing, within three years from this date, then if such liens, whether by mortgage or otherwise, are fully paid and cancelled, or caused to be paid and cancelled, this obligation to be void," etc.

The portion of the bond thus quoted amounts, in effect, to an executory contract bearing date eight days after the date of the warrantee deed. The mortgage to Mary E. Brogden was a lien standing against the land at the date of the contract. The Towns did not pay off the mortgage within three years, but suffered it to be foreclosed, resulting in a conveyance to the purchaser at the foreclosure sale and a judgment for possession against appellee. No question is made as to the validity of this mortgage sale or of the deed made in pursuance thereof. The appellee was not bound to take the risk of paying the incumbrance himself. He had a right to rely upon its payment by the obligors in his bond. He may not have had the money to discharge it.

It is unnecessary to inquire what may be the proper measure of damages in an action on the covenants against incumbrances and for quiet possession. The executory contract, embodied in the terms of the bond, is independent of the covenants in the deed, and, for the breach of this contract, appellee is entitled to recover such damages as are the necessary, natural and proximate result of such breach. He lost his title to the $26\frac{88}{100}$ acres, and the land itself, by the sale under the mortgage, and the proceedings for possession, which followed. The measure of his damages is the actual consideration which he paid for the land, together with interest at six per cent. The consideration named in the deed is the sum of $2000.00.

*Prima facie* the sum so named is the amount paid for the land. But, as between grantor and grantee, the recital in the deed is not conclusive evidence of the consideration paid. The actual consideration, which passed between the parties, may be shown by parol testimony to be different from the consideration recited in the conveyance. (3 Wash. on Real Prop. (4th ed.) page 375; *Kimball* v. *Walker,* 30 Ill. 482; *Illinois Land and Loan Co.* v. *Bonner et al.* 91 id. 120; *McCrea* v. *Purmont,* 16 Wend. 460; *Morse* v. *Shattuck,* 4 N. H. 229; *Parker* v. *Brown,* 15 id. 176.)

The appellee, on July 1, 1874, purchased the tract from Sylvanus Town by deeding to the latter two town lots known as the Rose street property and by executing his note for $1000.00. It appears from the testimony of four witnesses, that, on July 1, 1874, the Rose street property was not worth more than $500.00. Therefore the appellee will be made whole if he gets back his note and receives $500.00 with interest. By the decree of the Circuit Court the note is returned to him. In addition to this he is entitled to recover $500.00 with interest at six per cent from July 1, 1878. Under the circumstances of this case, interest should not be allowed from July 1, 1874, because appellee was in possession of the $26\frac{88}{100}$ acres, drawing the rents and profits, as late as some time in June 1878.

Our conclusion is that the decree of the court below is right in finding $2753.60 to be due to the appellee upon the notes, and in ordering the appellant to surrender to appellee the latter's note for $1000.00; but the decree should be so modified as to find that there is due to appellee upon the bond $500.00 with interest at six per cent from July 1, 1878, instead of $1515.00, and that appellant should be required to pay, instead of $2662.62, the sum of $540.98, with interest thereon at six per cent from March 11, 1879. If there shall be any surplus after paying the indebtedness on the bond, it should be applied upon the indebtedness on the notes.

The judgments of the Appellate and Circuit courts are therefore reversed, except in the respects above indicated, and the cause is remanded to the Circuit Court for further proceedings in accordance with the views here expressed.

*Judgment reversed in part and in part affirmed.*

Mr. JUSTICE BAILEY, having heard this case in the Appellate Court, took no part in its decision here.