### Henry C. Montgomery v. J. S. Crain, Administrator.

CONSIDERATION—*competency of evidence to show actual, given for conveyance.* It is always competent, in an action between parties to a deed, to explain the true consideration therefor.

Assumpsit. Appeal from the Circuit Court of Logan county; the Hon. THOMAS M. HARRIS, Judge, presiding. Heard in this court at the November term, 1906. Affirmed. Opinion filed June 1, 1907.

J. L. BEVAN and BLINN & COVEY, for appellant.

F. L. CAPPS and BEACH, HODNETT & TRAPP, for appellee.

MR. PRESIDING JUSTICE RAMSAY delivered the opinion of the court.

Erasmus D. Beardsley instituted suit in the Circuit Court of Logan county to recover from Henry C. Montgomery damages alleged to be due him (Beardsley) for breach of a contract upon the part of Montgomery to support and care for said Beardsley. The case has been twice tried. After the first trial Beardsley died and J. S. Crain was appointed administrator of his estate. Upon the second trial the jury returned a verdict in favor of the administrator and against Montgomery in the sum of $941.70, upon which the court rendered judgment and Montgomery appealed.

Deceased having been engaged in trade in Atlanta, Illinois, sold out his business in that city about the year 1875, and being at that time 71 years of age, went to live with appellant, who had married a sister of deceased, upon his farm.

In the issues as closed the claim was made by Beardsley that Montgomery verbally agreed to accept a conveyance of all the right, title and interest of Beardsley in 160 acres of land in Taylor county, Iowa, and a horse, buggy and harness which Beardsley then had, in full payment and discharge for appellant's keeping and maintaining Beardsley during his natural life,

etc., and that appellant failed to observe the terms of the contract upon his part and turned Beardsley away from his home unprovided for. In such issues appellant denied having made the contract alleged by Beardsley; denied that Beardsley was to simply convey what right, title and interest he had in the land in Iowa; but alleged that Beardsley made a warranty deed to him for the Iowa land; that there had been a breach of the covenant of warranty in said deed and that Beardsley was liable to appellant in the sum of $500 for damages on account of such breach, which he offered to off-set or recoup against any claim which Beardsley or his estate might have against him.

The evidence discloses that about the time that Beardsley went to live with Montgomery in 1876, he conveyed by warranty deed to Montgomery 160 acres of land in Taylor county, Iowa, with an expressed consideration of $1,600 although nothing in fact was paid, and also turned over to him an old horse, harness and buggy which was all the property that Beardsley then owned; that there was a defect in the title to the Iowa land and that Montgomery, by paying $500, purchased the outstanding interest in such land in 1880 and 1881 and thereby secured a perfect title thereto and afterwards traded the Iowa land toward the purchase of a farm in McLean county, Illinois.

It further appears from the evidence that about the first of January, 1903, appellant refused longer to keep Beardsley or provide him a home and as a result thereof he was boarded and cared for by others; that the expenses incurred for his board, care, medical attendance, nursing, etc., after he was so turned away by appellant, amounted to the sum of $941.70, which amount was allowed by the jury, for which the trial court rendered judgment.

Upon the issues closed the main question in the case was whether the verbal agreement alleged to have been made by and between Beardsley and Montgomery, before Beardsley went to live with Montgomery and be-

fore he made the deed in question, contemplated that Beardsley should merely convey and transfer to Montgomery what property he, Beardsley, then had, or whether such agreement contemplated the making by Beardsley of a warranty deed which, by its covenants, would impose upon Beardsley the duty of meeting the expense necessary to make the title good.

Whether or not there was a verbal contract, and the terms thereof, if any contract was made, were questions submitted to the jury properly as issues of fact. Upon the trial the jury, by their verdict, found that there was a contract or arrangement between Beardsley and Montgomery as claimed by appellee.

Appellant first contends that the evidence does not sustain the verdict and urges a reversal of the judgment upon that account. At the time of the first trial Beardsley was nearly 92 years of age and his memory, to a considerable extent, impaired; but his testimony fairly shows that he understood that he was to turn over to appellant what property he then had, in consideration of which appellant was to keep him and give him clothes as long as he lived and bury him when he died. His testimony shows that he deeded the Iowa land to appellant and himself put the deed on record and delivered all the deeds to the land he had to appellant, and transferred to him a spring wagon, horse and harness in pursuance of such agreement.

A Mrs. Osborne testified that appellant told her in a conversation relating to Beardsley that he, appellant, was to make a home for him; that he got what property Beardsley had and he was to keep him as long as he lived.

William Gibbs testified that he visited the home of appellant once where he saw Beardsley and that in a conversation concerning Beardsley appellant said: "This is his home. He had some property, some land in Iowa, and a little other property and he gave it to us and this is to be his home as long as he lives. When he dies I will give him a decent burial. He is the

busiest man in Logan county. I can go away from home and come back and feel assured all the chores around will be attended to.''

David Layton testified that appellant came to him to see about his taking care of Beardsley and that appellant then said: "He had to take care of him and wanted him taken care of. He said Beardsley gave him a farm in Iowa to take care of him as long as he lived.''

Henry C. Hawes testified that appellant said to him that Beardsley had deeded him his land in Iowa and that he was to give him a home. "I think he said as long as he lived.''

Appellant testified that he never had any contract with Beardsley; that there was not a word said about keeping him. "I never agreed to take that deed and keep him for the balance of his life and give him burial after he died.'' He also denied having conversations testified to by the witnesses Osborne, Gibbs, Layton and Hawes. This was in substance all the evidence upon that feature of the case and it seems to fully support the claim that Beardsley turned over to appellant all the property he then had and in return therefor received from appellant a promise to keep him for the balance of his life and bury him decently when he died. Beardsley was about 71 years old when he turned his property over to appellant and his prospect of life then not very long. He became a member of appellant's family, and so remained for a period of over twenty years.

When Beardsley became a greater charge by reason of advanced age, appellant sought to have him cared for by other persons to whom he said that he was willing to pay for such keeping. All these matters are consistent with the claim of appellee and are inconsistent with the claim of appellant that there was no contract between them, or if there was any contract or arrangement, that there was any misunderstanding as to its terms.

Appellant next argues that he should have been allowed to recoup or off-set against the claim of appellee the amount of money which he had to pay to make good the title to the Iowa land which Beardsley conveyed to him by warranty deed.

There was no error, in our judgment, either in the finding of the jury or in the judgment of the Circuit Court in this respect. It is always competent in an action between the parties to a deed to explain the true consideration thereof. Lloyd v. Sandusky, 203 Ill. 630; Howell v. Moores, 127 Ill. 67. So here it was competent to show that the real consideration was not $1,600 in cash, but an agreement upon the part of the grantee to do and perform certain acts.

The import of appellant's contentions upon this subject-matter was that he should be allowed to show that notwithstanding his verbal agreement to keep Beardsley as long as he lived he was only bound in law to keep him a part of that time.

If the real consideration for the making of the deed and the turning over of the personal property was a verbal undertaking upon the part of appellant to keep Beardsley as long as he lived, etc., then the verdict of the jury was right. We think the great preponderance of the evidence upon this subject is in favor of appellee's contention and the conduct of appellant seems to corroborate it. Appellant knew nothing of the character of the deed until after it had been recorded when Beardsley delivered it to him with other deeds to the land. He bought the outstanding interest in 1880 or 1881, and so far as the evidence shows never made any demand upon Beardsley to make the difference good, although Beardsley lived in his family after that time for a period of about twenty-three years. Appellant made no claim in this case by set-off or recoupment until the second trial of the case, after the death of Beardsley. He knew when the verbal agreement was made that he was getting all that Beardsley had to give and that Beardsley was there-

fore insolvent. Appellant's long delay, wholly unexplained, is inconsistent with the claim now made that the real consideration for the deed was $1,600 and that a breach of warranty can be alleged thereon.

Appellant next contends that the trial court was in error in giving the third instruction for appellee which assumed that by the terms of the verbal contract, if proven as claimed by appellee, Montgomery was to provide Beardsley with medical attendance, nursing, etc. If the jury adopted appellee's version of the verbal arrangement, then the appellant was to keep, make a home for, take care of and clothe Beardsley as long as he lived. The word "keep" is one of broad meaning. Webster defines it as meaning: "To support, to maintain; to supply with the necessaries of life." In the Encyclopedic dictionary it is given the same definition. The evidence tended to show conclusively that appellant was to keep and take care of Beardsley for the remainder of his life, and if he was, then Beardsley's necessary medical care and nursing were included in those general terms and the court was not in error in so instructing the jury.

Appellant also contends that there was error in the admitting of testimony as to the value of the services of nurses who cared for Beardsley in his last illness; but the evidence seems to have been sufficient to show that the services rendered were worth all that was claimed for them and that the persons who testified as to the value of such services had had enough experience in that line to make their opinions competent evidence.

The judgment was right and is affirmed.

*Affirmed.*